OPINION OF THE COURT
Fuchsberg, J.
In the end, testing the applicability of res judicata by transactional analysis of the claims presented in plaintiff’s *188 two successive suits against the defendant, the question here is whether dismissal of the initial one on Statute of Frauds and Statute of Limitations grounds must be said to have extinguished the subsequent one as well. We hold that it must.
The issue comes to us in a contextually attenuated legal and factual framework. As culled from the miscellany of pleadings and motion papers which constitute the record before us, the genesis of the controversy between the parties was plaintiff Russell J. Smith’s appointment in June, 1967, first as assistant to the dean and shortly thereafter as assistant dean, at defendant Russell Sage College’s Junior College of Albany. The arrangements for his engagement were negotiated orally between Smith and the then president of Russell Sage, Lewis A. Froman. Not without dispute, Smith claims that, as part of their agreement, President Froman promised that, if the time ever came when the institution no longer could support a full-time assistant dean, a teaching position would always be open to him. However, though plaintiff’s faculty appointments from 1971 on would be memorialized by annual letters, none of these referred in any way to the existence of tenure in general or the claimed undertaking in particular.
After Smith joined Russell Sage, so far as relevant here, things appear to have remained static until July 1, 1973, a date when Charles U. Walker, who had succeeded Froman as president some three years earlier, put into effect an administrative plan which called for the abolition of the assistant deanship post. This was no surprise to Smith. Both sides agree that, in February, 1972, Walker informed him that this was in the offing, and that Smith thereupon advised Walker of the oral job security stipulation he claims to have entered into with Froman. To this, according to Smith’s examination before trial, Walker is said to have rejoined, “in essence, then you have a lifetime agreement”, a comment to which Smith, who in his deposition was to characterize it as “baiting”, chose not to reply.[1] Whatever *189 the accuracy of this opinion, the fact is that, before the 1973-1974 college year was underway, Walker wrote to Froman to inquire as to the latter’s “understanding of the agreement”, to which Froman wrote back to say, “What I probably said was something to the effect that if he made good (a common expression of mine), there might be the opportunity to teach if the administrative position didn’t work out.” (Emphasis in the original.) In any event, as Smith was to describe it, defendant’s failure to tender him a teaching assignment caused him “to accept employment [with the college], under duress ** * * as a librarian and administrative assistant” for the ensuing year, only to be terminated entirely at its conclusion on June 30, 1974.
Against this background, Smith initially brought suit against the college in August, 1975. Spread discursively over eight causes of action, the allegations of his complaint, read liberally, may be said to have fallen into but two categories. The first of these, centering on the Walker-Froman letter exchange, was tortious in character; it charged that Walker’s letter to Froman had “falsely and fraudulently” misrepresented Smith’s conversation with Walker in stating that Walker had told Smith that he would abide only by a written agreement, that Walker had been negligent in accepting Froman’s letter at face value, that Walker had refused to give Smith access to Froman’s letter for six months, and that these had all been part of a design by Walker to “maliciously, deliberately, intentionally and deceitfully induce” the college’s board of trustees to relieve Smith of his position. The gist of the second category, sounding essentially in contract, was that the college was estopped from resisting enforcement of the oral agreement because Smith, expecting that it would be honored, had resigned his previous position as a high school teacher, had taken graduate courses towards a master’s degree and had foregone any attempt to obtain other employment in the favorable job market which he alleges prevailed during *190 the years preceding his severance from Russell Sage. All of this, plaintiff further pleaded, damaged his professional reputation, impaired his ability to obtain other employment and, therefore, entitled him to a declaration that the oral agreement was in force, to an order reinstating him and to a recovery for wages lost starting with July 1, 1974, the last presumably as part of a demand for $150,000 as special damages and $350,000 as punitive damages.
After a litigation course whose other details are not pertinent for present purposes, Special Term, treating the college’s motion to dismiss as one for summary judgment (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3211:44, p 48), concluded that so much of the suit as was predicated on the oral agreement was rendered unenforceable by the Statute of Frauds (General Obligations Law, § 5-701, subd a, par 1) and that the balance was barred by the one-year Statute of Limitations prescribed by CPLR 215 (subd 3). This decision was handed down in December, 1977. Though plaintiff moved unsuccessfully to vacate the formal order of dismissal which followed, no appeal was ever taken.
Instead, plaintiff commenced the present action in December, 1978.[2] Designating it one “for fraud perpetrated upon plaintiff by Charles U. Walker in his capacity of president”, his complaint now focused on two scanty excerpts from utterances claimed to have issued from Walker during conversations with Smith. One is the already noted “then you have a contract for lifetime employment”, the other a newly reported expression, “then that is better than tenure”, attributed by Smith to a later conversation in December, 1972. These fragments, the pleading tells us, were not only knowingly false but recklessly made representations “of the legal effect or consequences of an oral agreement”, to wit, the one allegedly made with Froman. The complaint also indicates that the falsity first came to light while the earlier *191 action was pending. The result, it continues, was that Smith, further influenced by a supposed “relationship of trust and confidence” between Walker and himself, was “induced to enter into the continued employment with the Junior College in Albany and induced * * * not to seek other employment opportunities during the year of 1972 and during about eleven months of 1973”, for which it demands judgment in the sum of $42,000 for loss of income and $18,-000 in punitive damages. Defendant’s answer included not only the defenses it had relied on the first time around but a newly interposed defense of res judicata.
The issue thus joined, the defendant, again by way of a CPLR 3211 motion properly expanded into one for summary judgment, sought dismissal once more. Special Term, reasoning that the successive suits were “essentially different”, that the fraud could be deemed “a recent discovery” and that the so-called “splitting doctrine” was not applicable, rejected defendant’s res judicata contentions. Because, in its perception, the time of discovery and the degree and effect of the confidential relationship the plaintiff asserted were issues warranting a trial, it then proceeded to deny the motion.
However, the order entered on this decision did not end Special Term’s procedural role. Before defendant could perfect an appeal it had taken, the plaintiff served an amended complaint, which, as Special Term was to observe, was “substantially the same” as the one it superseded. Defendant thereupon repeated its motion, which now came up before a Judge other than the original one, who, under the court’s assignment system, was no longer sitting at Special Term. The second Judge, other than to remark on the similarity of the papers, simply denied the motion with the comment that he was adopting the reasons of his predecessor. In this posture, defendant elected to preserve its position by pursuing appeals from the separate orders which disposed of the two motions.
For its part, the Appellate Division, which permitted both appeals to be prosecuted and heard together, in a single order dismissed the appeal from Special Term’s first order as moot, but, on the appeal from the second order, unanimously reversed and dismissed the amended complaint. *192 Explaining that a close examination of all the papers submitted on the motion to dismiss made it “plain that plaintiff neither relied upon nor was deceived” by what Walker had said to him, “but had attempted to convince Walker of the existence of a continuing employment relationship”, it held that, in any event, Smith “could not justifiably rely on a representation that he had a contract of employment for life”. As to res judicata, however, among other obiter dicta, it opined that no such bar was applicable since “the prior dismissals were not on the merits or involved causes of action other than fraud”.
Though, in turn, we now affirm the order of the Appellate Division, it is unnecessary for us to consider or pass on the other issues raised by the parties, for, unlike the courts below, we find res judicata bars this action. Our reasons follow.
We begin our analysis with the observation that, in deciding res judicata issues, we have moved to a more pragmatic test, which sees a claim or cause of action as “coterminous with the transaction regardless of the number of substantive theories or variant forms of relief * * * available to the plaintiff” (Restatement, Judgments 2d [Tent Draft No. 4, 1978], § 61, Comment a). Thus, in Matter of Reilly v Reid (45 NY2d 24, 29), we announced that, from the perspective of claim preclusion “[a] ‘cause of action’ may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery. A ‘cause of action’ may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated ‘causes of action’ may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought”. This holds true even when “several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts or would call for different measures of liability or different kinds of relief” (Restatement, Judgments 2d [Tent Draft No. 5], .§ 61, Comment c). For, what “factual grouping” constitutes a “transaction” or “series of transactions” depends on how “the facts are related in time, space, origin, *193 or motivation, whether they form a convenient, trial unit, and whether * * * their treatment as a unit conforms to the parties’ expectations or business understanding or usage” (Restatement, Judgments 2d [Tent Draft No. 1], § 61, cited as in accord with New York law in Matter of Reilly v Reid, supra, p 30; Restatement, Judgments 2d [Tent Draft No. 5], § 61.1 [exemplification of general rule concerning splitting]).
Applying these principles to the case at bar, the 1975 action and the one before us now are part of the saipe “factual grouping”. Though embellished by later events, both originate from the identical agreement. Each spans the period between the initiation and termination of Smith’s career at Russell Sage. The chief participants in the relevant events are the same: Smith, Froman and Walker. Though the legal theories differ in some respects, the motivation, vindication of Smith’s claim that the discharge was wrongful, is the same. The alleged confidentiality of the Smith-Walker relationship, though advanced in the one suit to support a claim of estoppel and in the other to establish fraud, is common to both. So is Smith’s concentration on his 1972 conversations with Walker, albeit in the original action he only emphasized the one which occurred in February of that year, while in the present one he stresses both the one in February and the one in December; indeed, since the quotations from both occasions are of similar import, it is hard to believe that reliance on one would not have led to the unveiling of the other. Under these circumstances, it is almost impossible to resist the conclusion that the over-all “transaction” here formed “a convenient trial unit” and that this view conforms to reasonable expectations.
Nor may the plaintiff elude claim preclusion because the present case was brought under the rubric of fraud. To be sure, “A defendant cannot justly object to being sued on a part or phase of'a claim that the plaintiff fails to include in any earlier action because of the defendant’s own fraud” (Restatement, Judgments 2d [Tent Draft No. 5], § 61.2, Comment j). But this is not such a case. The fraud alleged here could not have been the cause of the plaintiff’s failure to press such a theory earlier. There was no late discovery. As noted earlier, the Walker-Froman correspondence be *194 came available to Smith during the original suit; yet, the plaintiff, who was not reluctant to move to amend in other respects, did not do so in this regard. Furthermore, both of the Smith-Walker oral confrontations in 1972 had to have been known to the plaintiff in detail from the time they are supposed to have taken place. And, while Walker’s state of mind, i.e., his fraudulent intent, might be thought to be a new issue, since no newly discovered facts had come to the fore, it would have to be proved circumstantially out of the same skein of known facts underlying the initial suit. Put another way, this theory of recovery was as available to the plaintiff then as it is now (see Hyman v Hillelson, 55 NY2d 624).
Finally, comment is in order on whether the dismissal of the plaintiff’s prior action on Statute of Limitations and Statute of Frauds grounds was “on the merits” for claim preclusion purposes. Professor Corbin sagely notes that, since “legal rights and duties are incapable of definition without reference to societal remedies”, the effect of the Statute of Frauds on the legal relations of the contracting parties brings it to the level of a rule of substantive law (2 Corbin, Contracts, § 279). Similarly, the impact of the Statute of Limitations, though often denominated as procedural, in a practical sense may also be said to be substantive; as we have had occasion to observe, “while a time bar is usually said to affect the remedy * * * its interposition is at least as often the difference between life or death for the right as well” as the remedy (Matter of Sheerin v New York Fire Dept. Arts 1 & 1 B Pension Funds, 46 NY2d 488, 497; see Siegel, New York Practice, § 34). Suffice it to say that a dismissal on these grounds is at least sufficiently close to the merits for claim preclusion purposes to bar a second action, especially where the motion to dismiss the first action was treated as one for summary judgment on which the court considered submissions of the parties dehors the pleadings.[3]
*195 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed.

. The transcript shows that Smith’s exact testimony in this regard was, “He [Walker] stated that he — he made the statement to the effect that in essence, then yon have a lifetime employment agreement, and before I had a *189 chance to even reply to it, Frederick J. Murphy stated, ‘I wish I had that type of contract.’ And as I looked back on that conversation, I am of the opinion that * * * particular statement of Charles U. Walker, that in effect you have a lifetime employment agreement, was a baiting statement, that he intended that I answer that as ‘Yes,’ which I did not answer.”

. In the interim, two other actions brought by plaintiff against Russell Sage and two individuals were dismissed for failure to serve a complaint (CPLR 3012, subd [b]).

. It is pertinent that the Restatement, 2d, has completely abandoned the term “on the merits”. Thus, sections 47 and 48, setting out the rules of merger and bar, read as follows:
“§47. Judgment for Plaintiff-The General Rule of Merger
*195 “When a valid and final personal judgment is rendered in favor of the plaintiff: (a) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, but he can maintain an action upon the judgment; and (b) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.
“§48. Judgment for Defendant — The General Rule of Bar “A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.”
(See, also, Comment a to section 48.)