Kevin G. McGUIRE, Plaintiff,

v.

Richard M. SWITZER, Deputy Commissioner for Vocational Rehabilitation of the New York State Education Department, in his official and individual capacities; Basil Y. Scott, Former Deputy Commissioner for Vocational Rehabilitation of the New York State Education Department, in his official and individual capacities; and The Office of Vocational Rehabilitation of the New York State Education Department, Defendants.

No. 86 Civ. 0823 (MJL).

United States District Court,
S.D. New York.

March 27, 1990.

Phillips, Nizer, Benjamin, Krim & Ballon, by David Jacoby, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of New York by Steven M. Jacoby, Asst. Atty. Gen., New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

This is an action by plaintiff Kevin McGuire, who is a paraplegic, challenging New York State regulations that imposed a ceiling or "cap" on funding for his tuition

and maintenance expenses in connection with his law school education. He brings this action under Title I and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*, and 42 U.S.C. § 1983 seeking injunctive and declaratory relief as well as damages.

Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), to dismiss the complaint on the grounds that A) this Court does not have subject matter jurisdiction over defendants due to their Eleventh Amendment immunity to such claims, and B) the complaint fails to state a claim upon which relief can be granted. Defendants also argue that plaintiffs claims are barred by the statute of limitations and the doctrine of res judicata.

The motion was referred to Magistrate Leonard A. Bernikow for a recommendation as to the proper disposition of defendants' motion. In his thorough Report and Recommendation ("R & R"), the Magistrate recommended dismissal of four of the five claims on the ground that the Eleventh Amendment bars the type of relief plaintiff could properly seek against the state. The Magistrate further held that monetary damages were available based upon the state's alleged violation of § 504. For the reasons discussed below, this Court agrees with the Magistrate's R & R insofar as it holds that plaintiff's claims for retrospective monetary relief that are actually claims against the state are barred by the Eleventh Amendment and that plaintiff's claim based upon § 504 may partially stand. We disagree, however, with the Magistrate's findings that plaintiff's claims against defendants Scott and Switzer, in their individual capacities, are actually claims against the state [1] and that plaintiff's claims for prospective relief are moot. Yet, plaintiff's non-moot claims for injunctive and declaratory relief are barred by the doctrine of res judicata. Lastly, plaintiff has stated a § 1983 claim against the individual defendants in their personal capacities with respect to his allegations that

the cap regulations violate the individualization requirement of Title I and the Equal Protection Clause of the Fourteenth Amendment.

## BACKGROUND

Plaintiff McGuire is totally disabled, having suffered from paraplegia since the age of seven. He relies on a wheelchair for mobility. Continuously since 1978, plaintiff has been a client of defendant Office of Vocational Rehabilitation ("OVR").

OVR operates rehabilitation programs established under the federal Vocational Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* ("the Act"). The purpose of the Act is the development and implementation of programs of vocational rehabilitation for disabled individuals so that they can obtain gainful employment. Substantial amounts of federal funds are made available to states for provision of rehabilitation services upon submission of appropriate plans pursuant to 29 U.S.C. § 721. New York State has filed such a plan designating OVR as the agency responsible for vocational rehabilitation.

The Act requires states receiving funding under the Act to develop an "individualized written rehabilitation program" ("IWRP") for each person they are rehabilitating. 29 U.S.C. §§ 721(a)(9), 722. The IWRP is to be tailored to each client's individual needs and potential with emphasis placed upon the determination and achievement of a vocational goal for each individual.

Plaintiff maintains that from the outset of his client relationship with OVR, his IWRP has had employment as a practicing attorney as its goal. Complaint ¶¶ 17–18. In furtherance of this end, OVR funded plaintiff's undergraduate tuition and maintenance expenses at Boston University. Complaint ¶ 26. After graduating from Boston University in June 1983, plaintiff enrolled at Georgetown University Law

---

**1.** It is the opinion of this Court, however, that the parties should by way of a summary judgement motion fully brief the issue of whether plaintiff's claims against the defendants Scott and Switzer, in their individual capacities, are barred by Scott and Switzer's qualified immunity to such suits.

School. He has since graduated from the law school. In 1982, OVR promulgated new regulations that limited its expenditures on behalf of each of its clients to $1,500 a year for tuition and $1,300 for maintenance. *See* 8 N.Y.C.R.R. ¶¶ 247.-13(1)(*l*)(iv) (tuition); 247.13(e)(1)(i) (maintenance). OVR's assistance to plaintiff for these purposes had been restricted in accordance with these "caps" throughout his law school education at Georgetown. As a result, plaintiff has had to borrow more than $25,000 to cover the difference between the funding he receives and his actual costs. Complaint ¶ 40.

Plaintiff initially brought a *pro se* Article 78 proceeding, C.P.L.R. §§ 7801 *et seq.*, in New York State Supreme Court, Albany County, seeking review of an OVR administrative determination that had upheld the application of the "cap" regulations to him. The court dismissed the action on the grounds that the petition was not served on the Commissioner of Education or on the Attorney General as required by C.P.L.R. §§ 312 and 7804(c) and that the action was not brought within the four month period of limitations applicable to Article 78 proceedings under C.P.L.R. § 217.

Subsequently, plaintiff commenced the present action based on his belief that the caps undermine the individualization of service to rehabilitation clients that he alleges is required by federal law. Complaint ¶ 9. He seeks relief through five causes of action. First, plaintiff contends pursuant to § 1983 that the cap regulations deny him the equal protection of the laws as guaranteed by the Fourteenth Amendment by undermining the individualization required under federal law and by treating him differently from other, similarly situated persons. Plaintiff also alleges that OVR denied him his Constitutionally protected rights to due process by adopting cap regulations affecting his IWRP without giving him adequate opportunity to be heard.

Plaintiff also relies on § 1983 in his second cause of action which maintains that OVR's application of the cap regulations to him violates his statutory rights under Title I. His third cause of action is based solely on Title I under the implied right of action doctrine. Plaintiff's fourth case of action, brought under 28 U.S.C. § 1337, asserts that the application of the challenged regulations violates an act of Congress regulating commerce. Lastly, in the fifth cause of action, plaintiff alleges that OVR discriminates against him due to his disability, in violation of § 504 of the Act, 29 U.S.C. § 794.

Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), to dismiss the complaint on four grounds. First, defendants allege that this Court does not have subject matter jurisdiction over defendants due to their Eleventh Amendment immunity to such claims. Second, defendants argue the complaint fails to state a claim upon which relief can be granted. Third, defendants contend that plaintiffs claims are barred by the statute of limitations. Finally, defendants maintain that the claims made have already been considered and rejected and therefore the doctrine of res judicata requires that they be dismissed.

In his R & R, the Magistrate recommended dismissal of all the counts except plaintiffs fifth cause of action based upon § 504 of the Act. The Magistrate found that none of the claims are barred by the three-year statute of limitations that applies and that plaintiff's fifth cause of action for monetary relief is not barred by the earlier Article 78 proceeding. Next, the Magistrate determined that the Eleventh Amendment bars four of the five claims since the only aspects of those claims that were not moot sought retroactive monetary relief from the state and the state neither implicitly nor expressly waived its immunity with regard to those claims.

The Magistrate did find, however, that the state's sovereign immunity to suit was eliminated by Congress's amendment of § 504 of the Act, the statute underlying plaintiff's fifth claim. Finding that the alleged violation of § 504 at issue occurred in part after the amendment, the Magistrate held that monetary damages were available based upon the state's differing treatment

of the visually-impaired but not based upon OVR's differing treatment of its clients.

Plaintiff raises three objections to the Magistrate's R & R. First, he argues that there is no Eleventh Amendment bar to his first four claims because a) federal reimbursement removes the state's Eleventh Amendment immunity; b) the state implicitly waived its immunity privilege by accepting the federal guidelines for handicapped assistance; and c) the state officials are being sued in their individual capacities. Second, plaintiff claims that even if his injunctive claims are moot with regard to law school, he has a continuing relationship with OVR for which injunctive relief is appropriate and, in any event, this Court should use its discretionary powers to rule on any moot claims since the issue of discrimination in a case such as this is capable of repetition and will always evade review. Third, plaintiff argues that his § 504 action states a claim with respect to his allegation that OVR discriminated against him vis-a-vis other OVR clients.

Defendants object to the Magistrate's recommendation that plaintiff has stated an adequate claim with respect to his contention that he deserves to receive the amount of reimbursement for tuition and maintenance expenses that is given to eligible blind persons. Defendants maintain that Congress intended to treat the visually-impaired differently than other disabled individuals. In addition, defendants object to the Magistrate's R & R on the ground that the § 504 action should not proceed because the amendment that eliminated the state's Eleventh Amendment immunity did not cover the alleged violation at issue. In other words, defendants argue that if any violation occurred it did not occur "in part" after the passage of the amendment. Finally defendants claim that a one-year statute of limitation should apply and not the three-year limit recommended by the Magistrate.

## DISCUSSION

■ At the outset, it should be noted that on objection to a Magistrate's ruling, a District Court is to conduct "a *de novo* determination of the facts and legal conclusions to be drawn therefrom." *Campbell v. U.S. District Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *see generally*, 12 Wright, Miller and Elliott, *Federal Practice and Procedure*, § 3076.8 (1986 supp.).

### Statute of Limitations

■ The Magistrate's ruling that plaintiff's § 1983 claims are not barred by the statute of limitations is correct. As the Magistrate determined, the appropriate statute of limitations is three years, that being the statute of limitations for the New York general personal injury statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 214(5). *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir.1987). Defendants object to this conclusion on the grounds that *Okure v. Owens*, which held that the State's 3-year residual statute of limitations for personal injury claims not embraced by specific statutes of limitations was applicable to § 1983 actions, was decided erroneously and had been appealed to the Supreme Court. Since that time, the Supreme Court in an opinion written by Justice Marshall has affirmed the decision in *Okure v. Owens* holding that in all instances where state law provides multiple statutes of limitations for personal injury actions—as is the case in New York, *see* C.P.L.R. § 214(5) (three years) and C.P.L.R. § 215(3) (one year for intentional torts)—the State's general or residual personal injury statute of limitations should apply to § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). As a result, there can now be no dispute that New York state law provides a three year statute of limitations for § 1983 actions.[2]

---

**2.** While defendants had initially argued that plaintiff's claims under the Rehabilitation Act were time-barred, they have not raised the issue in their objections to the Magistrate's R & R. In any event, plaintiff's § 504 claim is also gov-

erned by a three-year statute of limitations. In *Fleming v. New York University*, 865 F.2d 478 (2d Cir.1989), the Second Circuit interpreted the Supreme Court's ruling in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96

■ Defendants also argue, however, that the cause of action arose prior to January 28, 1983 because plaintiff was advised of the caps in January 1983 [3] and therefore the action is time-barred even under the three year statute of limitations since the action was not filed until January 28, 1986. Yet, plaintiff did not find out until June 15, 1983 that the January notice he received was not, in OVR's view, erroneous. As a result, this Court concurs with the Magistrate's conclusion that "plaintiff's cause of action more definitely arose on June 15, 1983" when he received clear notice of the agency action that gave rise to his claims.[4] R & R at 5, n. 1. Plaintiff's § 1983 claims are therefore not time-barred.

*Eleventh Amendment Immunity*

■ The Magistrate found that plaintiffs first four claims were barred by the Eleventh Amendment. Looking only at plaintiff's claims for retroactive monetary relief—since the Magistrate found that plaintiff's demand for prospective relief was mooted by his graduation from law school—the Magistrate concluded that the state had neither implicitly nor expressly waived its immunity with regard to those four claims. The Magistrate did find however that defendants' sovereign immunity to suit with regard to plaintiff's fifth claim was eliminated when Congress amended § 504 of the Act. Both plaintiff and defendants raise numerous objections to these findings. *Supra,* pp. 103–104. This Court disagrees with the Magistrate's holding in

two respects. First, we find that plaintiff's claims against defendants Switzer and Scott in their individual capacities do not constitute a suit against the state itself and therefore are not barred by the Eleventh Amendment. Second, we hold that plaintiff's claims for prospective relief are not made moot by his graduation from law school.

■ Under the Eleventh Amendment, a private person may not sue a state in a federal court without its consent, whether or not the plaintiff is a citizen of that state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974) (citations omitted); *Minotti v. Lensink,* 798 F.2d 607 (2d Cir.1986). Where state officials are sued in their official capacities for retroactive money damages by private parties in a federal court, suit is still barred by the Eleventh Amendment because the liability is one which must be paid from public funds in the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355. This immunity extends to suits against agencies of the state. *Florida Department of State v. Treasurer Salvors,* 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982).

■ A state may waive its immunity, however, where waiver is unequivocally expressed. *Minotti v. Lensink,* 798 F.2d 607, 609. Plaintiff claims that New York has in fact waived its immunity for purposes of this suit by its enactment of New York

---

L.Ed.2d 572 (1987) as indicating that the statute of limitations applicable to personal injury actions in New York should apply to claims under § 504. *Fleming v. New York University,* 865 F.2d 478, 481–482 n. 1. The Court stated that *Goodman* "in characterizing discrimination claims as a 'fundamental injury to the individual rights of a person' and thus akin to personal injury actions, 107 S.Ct. at 2621, seems to suggest.... [that] this analysis should be extended beyond the Reconstructions Acts and laws forbidding racial discrimination to statutes like § 504 of the Rehabilitation Act of 1973." *Id.* Applying such analysis, the three year statute of limitations under CPLR § 214(5) is the most appropriate state statute of limitations to apply to a discrimination claim under § 504. *See Owens v. Okure,* 109 S.Ct. 573.

**3.** Defendants rely on plaintiff's allegation in his complaint that "in or about January, 1983" he was notified by OVR that the tuition and maintenance limits were to be applied to his law school education. Complaint ¶ 34. Neither plaintiff nor defendant, however, has indicated a particular date in January 1983 when plaintiff was notified of OVR's intent to impose the cap regulations to his educational reimbursement.

**4.** It is therefore unnecessary to reach plaintiff's additional claims that the statute of limitations should be tolled either because the wrong is a continuous one or because of his continuous client relationship with OVR.

Education Law § 1006(1).[5] For a state to be found to have waived its Eleventh Amendment immunity a state must speak in "the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (*quoting Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Moreover, the state "must specify [its] intention to subject itself to suit in *federal court.*" *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (original emphasis).

As the Magistrate concluded, this strict standard for finding that a state has waived its Eleventh Amendment immunity has clearly not been satisfied in the case at bar. The plain text of the statute in question, Education law § 1006(1), makes no mention of allowing suit against the state, let alone suit in federal court. Moreover, nothing in the legislative history of the statute or in the public policy of New York suggests either an express or implied waiver of its sovereign immunity. While plaintiff in objecting to the Magistrate's recommendation may argue that "[t]he likely reason for the unusually broad language [in Education law § 1006(1)] is that vocational rehabilitation was viewed as an area of uniquely federal concern," Plaintiffs Memorandum in Opposition to the Magistrate's R & R at 23, thereby suggesting the state's intent to allow suit against it in federal court, the standard for finding waiver requires a clear expression of that intent and not merely a nodding recognition of a federal interest in the matter at issue. The cases cited by plaintiff in objecting to the Magistrate's recommendation also fail to support his argument.

Plaintiff next argues that the Eleventh Amendment does not apply in this instance because New York would be fully reimbursed by the Social Security Administration ("SSA") for any expenditures on plaintiff's IWRP and therefore granting plaintiff the relief he requests would have no impact on the state's treasury.[6] The real effect, however, of granting plaintiff the retrospective relief he requests will be, as the Magistrate noted, an impact on the state treasury and therefore the Eleventh Amendment is a bar to our granting such relief.

Plaintiff contends that this case is "on all fours" with *Harrington v. Blum*, 483 F.Supp. 1015, 1021–22 (S.D.N.Y.1979), *aff'd mem.*, 639 F.2d 768 (2d Cir.1980), which held that retroactive relief was available to individuals who sued the State of New York for retroactive food stamp benefits because the federal government would reimburse the state for its expenditure. Plaintiffs Memorandum in Opposition to the Magistrate's R & R at 14. Even assuming *Harrington* has force beyond suits against states based upon the Food Stamp Act of 1964, 7 U.S.C. §§ 2011 *et seq.*, the principle it stands for is inapplicable to this case because New York would only have the potential for reimbursement. Any SSA reimbursement would be contingent on plaintiff's "performing substantial gainful activity for a continuous period of at least 9 months" after, and as a result of, the training for which the reimbursement is sought, 20 C.F.R. § 416.2201, as well as on plaintiff supplying OVR in a timely fashion sufficient documentation to support the claim. *See* 20 C.F.R. § 416.2208(a) (deadline for filing with SSA). Moreover, whether there will be any SSA reimbursement will be further contingent on SSA allowing the filed claim.

---

5. Education Law § 1006(1) provides:
 The State of New York, through its legislative authority:
 Accepts the provisions of any law of the United States making appropriation to be apportioned among the states for vocational rehabilitation of disabled persons, and accepts the provisions of any law of the United States making appropriation for apportionment or grants among the states for services for disabled persons.

6. Plaintiff also notes that OVR receives some federal funding from the Rehabilitation Services Administration of the U.S. Department of Education. 29 U.S.C. § 731(b)(1); 29 U.S.C. § 741(c). Yet, plaintiff does not claim that OVR would receive either full or direct reimbursement for its expenditures on plaintiffs IWRP.

Since there is no guarantee that the State will be fully reimbursed for any expenditure on plaintiffs IWRP, were this Court to grant the retroactive monetary relief requested by plaintiff, funding could very well have to come from the state treasury. The Eleventh Amendment can not be disregarded based on such contingencies. The holding in *Harrington* was based on *Bermudez v. United States Department of Agriculture*, 490 F.2d 718 (D.C.Cir.) *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), which held the federal government unconditionally liable for all retroactive food stamp benefits. *See Dunlop v. State of Minnesota*, 626 F.Supp. 1127, 1130 (D.C.Minn.1986). Such reimbursement is not guaranteed in the case before this Court and therefore the rationale in *Harrington* does not apply.

Plaintiff further objects to the Magistrate's finding that his first four claims are wholly barred by the Eleventh Amendment on the ground that he has sued the individual defendants in their individual capacities and that therefore any relief as against them would not come from the State's treasury. It is the opinion of this Court that the Magistrate incorrectly concluded that the action as against the individual defendants in their individual capacities is in reality a suit against the state and, therefore, barred by the Eleventh Amendment.

■ When a suit is brought not against the state but against state officials, the "question arises as to whether the suit is a suit against the state itself." *Dwyer v. Regan*, 777 F.2d 825, 835 (2nd Cir.1985), *modified on other grounds*, 793 F.2d 457 (2d Cir.1986) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). This inquiry is necessary because although suits for monetary awards out of state funds are deemed suits against the state and are thus barred, "where the relief sought, though an award of damages for a past deprivation, is sought not from the state treasury but from the official's personal funds, the Eleventh Amendment is no bar." *Dwyer v. Regan*, 777 F.2d 825, 836.

The caption, itself, gives little guidance in this inquiry, however, because while suits for money from a state official in his individual capacity are in general not considered suits against the state and therefore not barred by the Eleventh Amendment, *Dwyer v. Regan*, 777 F.2d 825, 835, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Minotti v. Lensink*, 798 F.2d 607, 609.

Plaintiffs have sued defendants Scott and Switzer in their individual capacities even though the challenged regulations were issued or applied by the individual defendants in their official capacities. Defendants contend and the Magistrate agreed that since "the alleged damages sought resulted from a state policy carried out by defendants in their official capacities, the action is against them in these capacities." Defendants Memorandum in Reply to Plaintiff's Opposition at 11. Defendants rely on *Jones v. Smith*, 784 F.2d 149, 152 (2d Cir.1986). In the more recent case of *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988), however, the Second Circuit rejected a reading of *Jones* that would interpret it to mean that a state official is immune from personal liability for carrying out a state policy that violated federal law. *Id.* at 923. The Court in *Farid* was very clear that in a "federal personal-capacity action against a state official. . . . *only* the federal interest in the supremacy of federal law is implicated, because the state treasury is not at risk." *Id.* (original emphasis). The Court went on to say that even where a state voluntarily decides to reimburse a state official in such actions, the Eleventh Amendment does not apply. *Id.* Consequently, plaintiff's claims against the defendants Switzer and Scott in their individual capacity are not barred by the Eleventh Amendment.

■ Lastly, the Magistrate held that plaintiff's fifth cause of action, based on

§ 504 of the Act [7], was not barred by the Eleventh Amendment because Congress eliminated the state's immunity with respect to suits for violation of this section. *See* Section 1003 of Public Law 99–506, 42 U.S.C. § 2000d–7 (Supp.1987). The Magistrate was correct in holding that this amendment covers the violations of § 504 which plaintiff alleges.

The amendment of Section § 504 which eliminated the state's Eleventh Amendment immunity with respect to suits for violation of that section occurred on October 21, 1986. *Id.* The amendment provides, in subsection b, that its provisions "shall take effect with respect to violations that occur in whole or *in part* after October 21, 1986." *Id.* (emphasis added). This amendment effectively reversed the Supreme Court's holding in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171, which held that a suit against a state for retroactive monetary relief under § 504 was proscribed by the Eleventh Amendment unless the state waived its immunity. Defendants argue that their challenged actions occurred prior to October 21, 1986 because they made no new decisions about plaintiff's assistance after this date and therefore the amendment does not affect these acts. As the Magistrate held, however, "if plaintiff is correct in his contention that an application of a cap to his tuition payments constituted discrimination, then the discrimination was 'in part' inflicted after the date of the amendment to § 504, a time when plaintiff was still attending law school." R & R at 12. Contrary to what defendants urge, the language used to demarcate those acts affected by the amendment cannot logically be interpreted to mean that the amendment covers only those specific acts which initiate discriminatory treatment. Rather, the use of "in part" more realistically reflects Congress's intent to reach those ongoing kinds of discrimination that had not concluded by the date of the amendment. Accordingly, plaintiff's claim under § 504 for

damages and injunctive relief is not barred by the Eleventh Amendment.

 While plaintiff's claims for retroactive relief must clear the obstacle posed by the Eleventh Amendment in order to survive defendants' motion to dismiss, his claims for prospective relief do not face such a barrier. *See Edelman v. Jordon,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356. It is well established that prospective injunctive relief is not barred even if that relief has an ancillary effect on the state treasury. *Burr v. Ambach,* 863 F.2d 1071, 1079 (2d Cir.1988); *Dwyer v. Regan,* 777 F.2d 825, 836. The Magistrate held, however, that plaintiff's requests for injunctive and declarative relief are moot because he has graduated from law school. On this score, we disagree with the Magistrate.

While it is true that plaintiff has graduated from law school and therefore no longer has direct tuition expenses, it is also true that he was forced to defer payment of these tuition expenses by the undertaking of substantial debt. Complaint ¶ 40. Therefore, he is, in effect, still making tuition payments in furtherance of his vocational goal when he services this debt. Since his IWRP can be revised as needed, plaintiff's sought relief—an order that his IWRP be revised so as to require OVR to reimburse him for his tuition expenses—is neither mooted by his graduation from law school nor retroactive in nature.

In *Burr v. Ambach,* 863 F.2d 1071, a child subject to the provisions of the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* ("EHA"), was denied a proper education placement because the child's former school had closed and he had been refused admission by another school. Due to extended delays in the consideration of administrative appeals concerning the placement at the second school, by the time the child's claim was considered by the district court he was approaching the EHA's statutory limit for mandatory education of 21 years of age. He sought an educational placement for a period beyond

---

7. This section implicitly creates a private cause of action directly against the recipients of federal funds. *Marlow v. United States Department*

*of Education,* 820 F.2d 581, 583 (2d Cir.1987) (per curiam), cert. denied, 484 U.S. 1044, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988).

his 21st birthday in view of the administrative delays, during which he had remained out of school. The Second Circuit reversed the district court's holding that such relief was barred by the Eleventh Amendment. The Court of Appeals, in dictum, characterized the mandatory injunction requested as "purely prospective in nature" and noted that "any effect on the state treasury is ancillary to such relief and therefore permissible despite the eleventh amendment." *Id.* at 1079. Similarly, plaintiff seeks relief which will operate prospectively to compel defendants to not rely on allegedly illegal regulations in servicing plaintiff's IWRP in the future. This would include reimbursement for tuition expenses, in the form of debt payments, made in the future. Any impact on New York's treasury would therefore be merely ancillary and not barred by the Eleventh Amendment. Furthermore, as the Second Circuit recently stated in *Russell v. Dunston*, 896 F.2d 664 (2d Cir.1990):

> [T]he existence of a past harm [does not] render an otherwise forward-looking injunction retroactive. If it did, the rule allowing prospective relief would be substantially undermined because the need for prospective relief often arises out of past injury.

The Act provides that "[e]ach individualized written rehabilitation plan shall be revised as needed." 29 U.S.C. § 722(b)(2). OVR recognizes this in its own regulations. *See* 8 N.Y.C.R.R. § 247.10(a) ("The New York State Education Department.... will initiate and continuously develop an individualized written rehabilitation program...."); 8 N.Y.C.R.R. § 247.10(e) ("the [IWRP] shall be reviewed as often as necessary, but at least annually...."). OVR

therefore has the present capacity to revise plaintiffs IWRP to include full tuition costs.

Even if plaintiff were to have, or has, achieved his vocational goal to practice law, nothing can be found either in the Act or in OVR's regulations that permanently terminates a client's relationship with OVR when a certain employment commences. As a result, plaintiff's request that this Court order that his continuing IWRP, or potentially a new IWRP, be "revised as needed" to bring it into conformity with OVR's alleged obligations under the Act is not barred.[8]

*Res Judicata*

■ Prior to instituting this action, Plaintiff brought a *pro se* Article 78 proceeding, C.P.L.R. §§ 7801 *et seq.*, in New York State Supreme Court, Albany County, seeking review of an OVR administrative determination that had upheld the application of the "cap" regulations as to him, the court never reached the merits of his claims. The court found that the petition was not served on the Commissioner of Education or on the Attorney General as required by C.P.L.R. §§ 312 and 7804(c) and that the action was not brought within the four month period of limitations applicable to Article 78 proceedings under C.P.L.R. § 217. Although plaintiff was without counsel and the state court never reached the merits of his claim, this brief venture to state court is a bar to our considering the merits of plaintiff's remaining claims for injunctive and declaratory relief.

In *Migra v. Warren City School District*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984), the Supreme Court held that the Full Faith and Credit Clause, as

---

8. Even if plaintiff's claims were moot, this Court would nevertheless not dismiss them on such grounds since the claims are capable of repetition and likely to evade judicial review. When plaintiff commenced this action, it was nearly one and a half academic years before his graduation from law school. Since a person who seeks to challenge an OVR regulation must first proceed though OVR's layers of administrative review, it is possible that no person subject to the caps would ever be able to obtain federal court review before completing his or her last year of school. *See Board of Education of Hen-*

*drick Hudson Central School District v. Rowley*, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041 n. 9, 73 L.Ed.2d 690 (1982) (Expiration of an individualized educational program for the school year did not moot a suit claiming that it provided an inadequate individualized education program for a handicapped child. "Judicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings..... [T]he alleged deficiencies in the IEP were capable of repetition as to the parties before it yet evading review.")

implemented by 28 U.S.C. § 1738, requires that a federal court in a section 1983 action give the same preclusive effect to a state court judgement as would the courts of the rendering state, regardless of whether the issues in the federal action had actually been litigated in a prior state action. *Id.* Thus, the issue before this Court is the preclusive effect a New York State court would give to the dismissal of plaintiff's Article 78 proceeding.

Plaintiff's state court action, commenced pursuant to Article 78, was dismissed on the grounds that he failed to serve the Commissioner of Education or the Attorney General as required by C.P.L.R. §§ 312 and 7804(c) and that his action was untimely.[9] New York considers a dismissal on statute of limitations grounds as "sufficiently close to a decision on the merits to bar a second action." *Bray v. New York Life Insurance,* 851 F.2d 60, 64 (2nd Cir.1988) (citing *Kirkland v. City of Peekskill,* 828 F.2d 104, 109 (2d Cir.1987); *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 72, 429 N.E.2d 746, 750 (1981); *De Crosta v. Reynolds Construction & Supply Corp.,* 41 N.Y.2d 1100, 396 N.Y.S.2d 357, 359, 364 N.E.2d 1129, 1131 (1977)). Furthermore, New York has adopted a "transactional approach" for determining the scope of res judicata. *Gargiul v. Tompkins,* 790 F.2d 265, 269 (2d Cir.1986) (citing *Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)). Under this analysis, if the claim asserted in the second forum arises from the same "factual grouping" that gave rise to the claim in the first forum, the subsequent claim is barred despite its assertion of different legal theories or request for different relief. *See Smith v. Russell Sage College,* 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749; *Reilly v. Reid,* 407 N.Y.S.2d 645, 647, 379 N.E.2d 172, 174–75. This theory assumes however that the first forum had the power to consider the theory advanced and award the relief requested in the second action. Therefore, if the first forum lacked the requisite authority, considerations of fairness dictate that res judicata not apply. *See Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986).

In the Article 78 proceeding, plaintiff challenged OVR's application of the cap regulations to his IWRP. In that prior action, plaintiff could have raised all the federal claims for injunctive and declaratory relief that he brought in the instant action. Since plaintiff would have had an opportunity to litigate these claims in the earlier proceeding, he is precluded from doing so in this instant action. *See Fay v. South Colonie Central School District,* 802 F.2d 21, 30 (2d Cir.1986). Plaintiff could not, however, have litigated his remaining claim for damages in the Article 78 proceeding. In *Davidson,* the Second Circuit held that an Article 78 proceeding would not have preclusive effect on a later section 1983 claim for damages since these damages would not have been available in an Article 78 proceeding pursuant to C.P.L.R. § 7806. 792 F.2d 275, 279. As a result, plaintiff's remaining claims for damages—which are all his claims against defendants Scott and Switzer in their individual capacities and his § 504 claim against the other defendants—are not barred by res judicata since, as held in *Davidson,* the damages in a civil rights case can not be viewed as incidental to the relief sought in Article 78 proceedings. *Id.*

While "we recognize the unfairness of precluding [plaintiff] from having a court reach the merits" of his claims for injunctive relief, especially when he had commenced the Article 78 proceeding *pro se,* "there is no principled basis upon which to distinguish [plaintiff's] case from the governing New York law." *Bray v. New York Life Insurance,* 851 F.2d 60, 64. We must therefore abide by the follow dictate:

> Once a plaintiff has entered the state court system, she is bound by the preclusion rules governing that system, and the federal courts in turn must respect the finality of the judgments that issue from the state court.

*Id.*

### Section 1983 Claims

Moving on to plaintiff's claims for damages against the individual defendants in

---

9. Suit was filed after the four months limita-
tions for Article 78 proceedings had expired.

their personal capacity, plaintiff's two causes of action based on § 1983 should be dismissed in part. The claims do state a cause of action against the state officials in their individual capacities pursuant to § 1983 insofar as they seek to enforce rights arising under Title 1 of the Act or protected by the Equal Protection Clause of the Fourteenth Amendment.[10]

These remaining causes of action state a claim insofar as they seek to enforce rights arising under Title 1 of the Act or protected by the Equal Protection Clause of the Fourteenth Amendment. Defendant contends that plaintiff's first cause of action should be dismissed because Congress intended to preclude § 1983 from being employed to enforce rights arising under the Vocational Rehabilitation Act. The statutory framework of the statute however belies this contention.

The Supreme Court has held that § 1983 "broadly encompasses violations of federal statutory.... law," *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Yet, two exceptions to this general proposition have been recognized: 1) where Congress has foreclosed private enforcement of that statute in the enactment itself, and 2) where the statute does not create enforceable

rights. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545. While defendants correctly argue that Congress did not impliedly intend to create a private right of action under Title I[11], they can point to nothing either in the statute or its legislative history which indicates that Congress intended to foreclose a private right of action based upon § 1983. This Court must presume that a § 1983 right of action exists unless the underlying statute evidences a desire by Congress to foreclose such an action. *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), ("§ 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement"); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19–21, 101 S.Ct. 2615, 2625–27. In the statute in question, there is no evidence that Congress either impliedly intended to create a private right of action or foreclose such an action under § 1983. *See Ryans v. New Jersey Com-*

10. The Supreme Court recently ruled in what has been described as an "ill-founded and sophistic opinion," *Gray v. University of Kansas Medical Center, et al.,* 715 F.Supp. 1041, 1043 (D.C.Kan.1989), that states are not "persons" within the meaning of § 1983. *Will v. Michigan,* — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Although the Court in *Will* went on to hold that state officials sued in their official capacity are also not "persons" within the meaning of § 1983, *Id.* at n. 10, they are of course "persons" under the statute when sued individually.

11. It is for this reason that plaintiff's cause of action based upon an alleged implied right of action under Title I must be dismissed. The intent of Congress governs whether a statute creates a private right of action. *Universities Research Association v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). The legislative history of the statute supports the view that Congress did not intend to create an implied right of action. In 1978, the Act was amended to add procedures

for administrative review for aggrieved individuals dissatisfied with state agency determinations. 29 U.S.C. § 722(d). A provision for judicial review of these state agency decisions was considered but not included in the final amendment. While not conclusive, this omission strongly suggests that Congress did not envision a private right of action created by the statute. Although this is the only evidence that Congress did not intend to create an implied private right of action, there is no evidence to indicate that it intended to do so and "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). As a result, this Court follows *Jones v. Illinois Dept. of Rehabilitation Services,* 504 F.Supp. 1244 (D.C.Ill.1981), and *Ryans v. New Jersey Commission for the Blind,* 542 F.Supp. 841 (D.C.N.J.1982), in holding that there is no implied private right of action under Title I. *Contra Scott v. Parhams,* 69 F.R.D. 324 (N.D.Ga. 1975).

*mission for the Blind, et al.*, 542 F.Supp. 841, 848 (D.C.N.J.1982) ("it is quite possible to find in [the Rehabilitation Act], therefore, the absence of any intention on the part of Congress to either create an implied right of action or to preclude the assertion of a § 1983 action"). *But see Litvak v. Scott*, 83 Civ. 0594 (E.D.N.Y.1984).

Defendants alternatively argue that even if the Act does not foreclose a private right of action, it creates no rights enforceable under § 1983. They argue that the Act is "principally a funding statute designed to achieve certain goals" and not an "entitlement program that is enforceable in private actions under § 1983." Defendants' Memorandum of Law at 15. Far from sharing defendants' view of this important statute, we concur with Judge Debevoise's reading of the Act in light of the controlling Supreme Court cases, *Pennhurst State School v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) and *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502:

> There can be little doubt that the statutory provisions upon which plaintiff places primary reliance, 29 U.S.C. §§ 722 [requiring individualized written rehabilitation program and] 723 [governing scope of vocational rehabilitation services], create rights enforceable under § 1983 . . . . .
> Clearly, the practical concerns expressed by the Supreme Court in *Pennhurst* do not apply to Title I of the Rehabilitation Act. Far from imposing indeterminate obligations upon the states without substantial funding, the Act creates quite specific rights and remedies backed up by generous federal funding much like the AFDC program at issue in *Thiboutot*. Under the Circumstances, the only conclusion is that Title 1 creates enforceable "rights" within the meaning of § 1983.

*Ryans v. N.J. Commission for the Blind*, 542 F.Supp. 841, 847. The right which plaintiff seeks to vindicate, the right to an individualized written rehabilitation plan, is sufficiently "specific" to be a right enforceable under § 1983. *See Wright v. City of Roanoke Redevelopment and Housing Authority*, 107 S.Ct. 766 (public housing tenant's right to have only a reasonable charge made for utilities was among the tenants' congressionally conferred benefits which were "sufficiently specific and definite to qualify as enforceable rights" under § 1983). As a result, plaintiff's § 1983 claim based upon alleged violations of Title 1 of the Act withstands defendants' 12(b)(6) motion.[12]

Plaintiff's other cause of action pursuant to § 1983, however, must be dismissed in part. Plaintiff bases his second § 1983 claim on the alleged deprivation of his rights to due process and equal protection. Plaintiff concedes that he received prior notice and an opportunity to be heard at the time his IWRP was amended in accordance with the challenged caps. Due process requires no more. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiff responds, however, that he neither received prior notice nor was given an opportunity to be. heard at the time the challenged policy was adopted. The property right that must be alleged to have been deprived in order to constitute a constitutional claim, though, must be an interest personal to him. Plaintiff cites the appropriate test in his papers:

> In order to constitute a property right, one must have a current valid expectation, based on the Government's implied promise to continue an entitlement, in an important, *personal*, monetizable interest.

*Cervoni v. HEW*, 581 F.2d 1010, 1018 (1st Cir.1978) (emphasis added). Since the only property right that could possibly be the basis for this constitutional claim is his alleged right to receive the benefits as promised in his IWRP, the due process he was afforded when his IWRP was revised was sufficient.

Plaintiff's equal protection claim has two prongs. First, he argues the state

---

12. It is therefore unnecessary to reach the issue of whether 28 U.S.C. § 1337 provides an independent basis for this Court's jurisdiction over plaintiff's claims based upon alleged violations of Title I of the Rehabilitation Act.

is preferring its less severely disabled recipients of funds over those more severely disabled when it applies the cap regulations equally to all eligible disabled persons. Second, plaintiff claims that the state arbitrarily favors visually-disabled individuals over other disabled individuals since the state's existing cap regulations are higher for those who are clients of the New York State Commission on the Blind and Visually Handicapped ("CBVH") than for those who are clients of OVR.

The first prong of plaintiff's cause of action fails to state a claim for the simple reason that there is no discrimination by the state in its treatment of the two groups identified by plaintiff.[13] Plaintiff argues that since OVR's less severely disabled clients will often have lesser needs for rehabilitative services than its more severely disabled clients, applying the same caps to both groups impermissibly favors the former group over the latter. OVR applies the same cap regulations to all its clients without regard to the severity of their disabilities. While it is true that some less severely disabled individuals might have a greater percentage of their maintenance expenses reimbursed by OVR, the percentage of reimbursement for tuition and maintenance expenses any individual receives under the cap regulations will be a product of many factors unrelated to the severity of the individual's disability—most obvious being tuition expense. As a result, it cannot be said that the group identified as less severely disabled is treated differently than the group identified as more severely disabled.

■ The second prong of plaintiff's equal protection claim, however, is on different footing. Even assuming that, as defendants contend, minimal scrutiny[14] is

the appropriate standard to apply under the Equal Protection Clause, defendants have failed to establish that the state has a rational basis for favoring visually-impaired individuals over its other rehabilitative clients in its provision of tuition and maintenance expenses.

Defendants defend the differentiation on the grounds that 1) different state agencies are entitled to make their own judgments with respect to funding under their jurisdiction and 2) the state is entitled to put some fiscal limits on its vocation rehabilitation services.[15] They further argue that the rational basis test need not even be applied since plaintiff has not alleged that "similarly situated persons" are being treated differently.

The Act provides that a state may elect to designate a single state agency to administer a vocation rehabilitation plan which serves both the blind and all other disabled individuals, or designate separate agencies, as New York has done, one to serve the blind and another to serve non-blind disabled individuals. 29 U.S.C. § 721(a)(1). Congress has classified both blindness and paraplegia, plaintiff's condition, as severe handicaps. 29 U.S.C. § 706(15)(A)(iii). Defendants cannot be heard to argue that plaintiff has failed to even claim that "similarly situated persons" are being treated differently when Congress has gone so far as to determine that visually-disabled individuals are similarly situated to those individuals as severely disabled as plaintiff.

As a result, we need go to the next step and determine whether the state has a rational basis for applying different caps to services for visually-disabled individuals than to services for individuals having other severe disabilities. While defendants

---

**13.** The Act requires that those individuals with the most severe disabilities be preferred over those individuals with less severe disabilities if vocational rehabilitation services cannot be provided to all eligible disabled persons. 29 U.S.C. § 721(a)(5)(A).

**14.** Defendants argue that handicapped individuals do not constitute a suspect class citing *Sherer v. Waier,* 457 F.Supp. 1039, 1048 (W.D.Mo. 1978), *Doe v. Koger,* 480 F.Supp. 225, 230 (N.D.

Ind.1979), and *Colin K. v. Schmidt,* 536 F.Supp. 1375 (D.C.R.I.1982) and that since education is not a fundamental right, *San Antonio Ind. School District v. Rodriguez,* 411 U.S. 1, 44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973), minimal scrutiny is appropriate.

**15.** Defendants do not dispute that the caps on tuition and maintenance expenditures applied by CBVH are higher than those applied by the OVR.

are correct that a state may limit funding for vocational rehabilitation services, it may not do so in an arbitrarily discriminatory manner. Moreover, the fact that the state has created separate agencies to serve the needs of blind and non-blind handicapped individuals is irrelevant. Both agencies are arms of the state and the state is therefore ultimately responsible for the regulations the agencies promulgate. Since there is no rational basis for the substantially higher cap on tuition and maintenance expenditures that the state applies to CBVH's clients than that it applies to OVR's clients, plaintiff's § 1983 claim challenging these regulations on equal protection grounds may stand.

*Section 504 Claim*

Plaintiff's next cause of action, based upon § 504, revolves around two issues nearly identical to those raised in the context of his equal protection claim. Section 504 bars discrimination against any otherwise qualified disabled person solely by reason of his disability in any program or activity receiving federal financial assistance. 29 U.S.C. § 794. Plaintiff first argues that since the Act requires that those individuals with the most severe disabilities be preferred if vocational rehabilitation services cannot be provided to all eligible disabled persons, 29 U.S.C. § 721(a)(5)(A), the state is preferring its less severely disabled clients over its most severely disabled ones—solely on the basis of their disabilities—when it applies the cap regulations equally to all eligible disabled persons. Second, plaintiff claims that the state discriminates against non-blind disabled individuals since the state's existing cap regulations are higher for those who are clients

of CBVH than for those who are clients of OVR.

■ The Magistrate recommended that we dismiss the former aspect of the claim and let stand the latter aspect.[16] With regard to the first aspect of plaintiff's claim, we concur with the Magistrate that plaintiff has not been discriminated against because of his disability. For the reasons discussed in the context of plaintiff's equal protection claim, we agree with the Magistrate's conclusion that:

> The cap regulations are uniformly applied to all individuals without regard to the severity of their handicaps. Plaintiff receives less reimbursement for tuition because he has opted to attend law school. If he elected to attend a less expensive kind of school, a higher percentage of his tuition would likely be paid for. The deficiency in his reimbursement is thus the result of his superior ambition and abilities, not his handicap.

R & R at 18. As a result, this aspect of plaintiff's § 504 claim must be dismissed.

■ Yet, as with his equal protection claim, plaintiff does make out a § 504 cause of action based on the disparity between the state's reimbursement funding for the blind as compared to its funding for other disabled individuals. Plaintiff's disability is as severe as blindness and the only reason the state provides him with less funding for his tuition and maintenance expenses is because his disability does not involve the impairment of sight.[17] The implementing regulations of the Department of Health and Human Services proscribe this type of differential treatment:

---

**16.** The Magistrate's conclusion that discrimination vis-a-vis other disabled persons is cognizable under § 504 is supported by the bulk of the authority. *See, e.g., Doe v. Colratti,* 592 F.2d 704, 708 (3d Cir.1979); *Clark v. Cohen,* 613 F.Supp. 684, 692 n. 6 (E.D.Pa.1985), aff'd 794 F.2d 79 (3d Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986); *William v. Gill,* 536 F.Supp. 505 (D.C.Ill.1982). *But see Colin K. v. Schmidt,* 715 F.2d 1, 9 (1st Cir.1983).

**17.** As discussed above, defendants are unable to provide any justifiable reason for applying high-

er caps to services for visually-disabled individuals than to services for individuals having other severe disabilities. While defendants are correct that a state may limit funding for vocational rehabilitation services, it may not do so in an arbitrarily discriminatory manner. *See generally Detsel v. Sullivan,* 895 F.2d 58 (2d Cir.1990) (overturning state agency denial of Medicaid-covered nursing services to handicapped child during time she attends public school because no reasonable basis for limitation).

A recipient, in providing any aid, benefit, or service, may not.... on the basis of handicap:

(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded to others; ....

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such actin is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others; ....

(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, opportunity enjoyed by others receiving an aid, benefit, or service.

45 C.F.R. § 84.4(b), quoted in *New York State Association for Retarded Children, Inc. v. Carey,* 466 F.Supp. 487, 502 (E.D.N.Y.1979). While defendants contend that § 84.4(b) applies only to disabled persons vis-a-vis non-disabled persons, they are unable to point to any language in the provision or the accompanying text or to any other evidence to support this position. The regulation states that a qualified disabled individual cannot be denied a level of benefits provided to others solely on the basis of that disability. Plaintiff was denied a level of reimbursement for tuition and maintenance expenses equal to that provided to visually-disabled individuals solely on the basis of his particular disability. Such disparities in reimbursement provide the basis for a claim under Section 504.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff may proceed in this action on the following claims:

(1) plaintiff's § 1983 claims against defendants Switzer and Scott, in their individual capacities, for retroactive monetary relief based upon a) the state's alleged denial to plaintiff of the equal protection of the laws by its disparate treatment of him vis-a-vis the state's treatment of eligible visually-disabled individuals, and b) the state's alleged violation of plaintiff's statutory right under Title I to receive an individualized IWRP; and

(2) plaintiff's § 504 claim against OVR and defendants Switzer and Scott, in their individual and official capacities, for retroactive monetary relief based upon the state's alleged discriminatory treatment of eligible non-blind disabled individuals.

Before the action can continue against the two defendants Switzer and Scott in their individual capacities, it must be determined whether or not they have a qualified immunity against such claims. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988). Since the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion in this instance and should more appropriately be the subject of a summary judgment motion, *see Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983), the parties are to complete discovery and submit briefs on this issue.

The parties are to complete discovery by May 11, 1990. Defendants Scott and Switzer then have until May 25, 1990 to submit their motion for summary judgement and accompanying papers based upon the defense of qualified immunity. Plaintiff has until June 4, 1990 to submit response papers to defendants' motion for summary judgment.

It Is So Ordered.