Robert FELDSTEIN, Plaintiff,

v.

**NEW YORK STATE OFFICE OF MEN-
TAL HEALTH, BRONX PSYCHI-
ATRIC CENTER, Defendant.**

No. CV–91–3376.

United States District Court,
E.D. New York.

March 16, 1994.

Jeanne–Marie Downey, Haight, Gardner, Poor & Havens, New York City, for plaintiff.

Stephen M. Jacoby, Asst. Atty. Gen., New York City, for defendant.

### MEMORANDUM AND ORDER

GLASSER, Senior District Judge:

This is a motion by defendant the New York State Office of Mental Health ("OMH") and its Bronx Psychiatric Center ("BPC"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that an adverse determination for plaintiff in an Article 78 proceeding precludes this Title VII action. For the following reasons, defendant's motion is granted.

### FACTS

**A.  Feldstein's Employment with the BPC**

From on or about January 14, 1988, to on or about February 11, 1989, Feldstein was employed by the OMH and worked as an orderly (a "Secure Care Treatment Aide I")

at the BPC.  Amended Complaint ¶¶ 8, 12; Def.'s 3(g) Statement, ¶ 1.  Affidavit of Stephen M. Jacoby, October 5, 1993 ("Jacoby Aff'd"), Ex. 4.

On or about January 9, 1989, the BPC Senior Personnel Administrator approved the extension of Feldstein's probationary period of employment with the BPC pursuant to Civil Service Regulation Section 4.5(f) because of his accumulated absences.[1]  Jacoby Aff'd, Ex. 2.  On January 11, 1989, Feldstein sent a memorandum to a Norma Hardy, a supervisor at the Secure Care Unit, protesting these evaluations.  *See* Jacoby Aff'd, Ex. 3 at 1 ("I have maintained for 52 weeks a perfect attendance record, clearly quite an accomplishment in a facility that rewards employees for maintaining a perfect attendance record for even a *month.*") (emphasis in original).  Nevertheless, in a letter dated January 13, 1989, Feldstein was informed that his probationary period was being extended for a total of 21 work days to February 11, 1989.  Jacoby Aff'd, Ex. 4.  On or about January 27, 1989, Feldstein grievanced the extension of his probationary period and sought "[r]ecission [sic] of letter extending probationary period and execution of a notice of Tenure Status."  Jacoby Aff'd, Ex. 5.  However, the Director of Personnel at the BPC, in a letter dated February 1, 1989, informed Feldstein that BPC was "terminating [his] probationary services as a Secure Care Treatment Aide I, effective Thursday, February 9, 1989, close of business."  Jacoby Aff'd, Ex. 6.

In a memorandum dated February 2, 1989, Feldstein wrote again to Norma Hardy and stated, among other things, that "I wrote to you on 1–13–89 [sic] in part for the purpose of formally protesting the rating I was given by you in my probationary evaluation, but more importantly in the hope that you would realize how unfairly and illegally I have been treated by yourself and some of my co-workers[.]"  Jacoby Aff'd, Ex. 7.  In this memorandum, Feldstein complained of "racial bigotry" by a co-worker, Ms. Jiggetts, and wrote

---

1.  This regulation is now codified in N.Y.Comp. Codes R. & Regs. tit. 4, § 4.5(g) (1989) which reads in relevant part that "[a]ny periods of authorized or unauthorized absence aggregating up to 10 workdays during the probationary term, or aggregating up to 20 workdays if the probationary term or maximum term exceeds 26 weeks, may, *in the discretion of the appointing authority,* be considered as time served in the probationary term."  (emphasis added).

that "[Ms. Jiggetts] admitted to me that I have not been treated equally, but warned me that I would not be able to prove it because everyone will back her up."[2]

In a memorandum to the personnel department at the BPC, dated February 6, 1989, Feldstein wrote that "I request that this facility recind [sic] my termination of services on the grounds that such termination is not in the facility's best interests, is arbitrary and capricious, is in breach of both the Labor–Management Contract as well as my personal contract with the facility, and is a violation of my Human Rights." Jacoby Aff'd, Ex. 8. In this memorandum Feldstein objected to his termination based on, among other things, the allegation that "[m]y termination was arbitrary and capricious because its' [sic] purpose was not the legitimate agency goal of retaining competent employees, but rather to placate other employees whom I was socially incompatible with due to my being white, male, [J]ewish and educated." Feldstein complained that his allegations of mistreatment by his co-workers were not being handled properly by the facility and threatened to "seek remedy from the Courts, Union, and Division of Human [R]ights[.]" In a memorandum to Ms. Marlene Lopez ("Lopez"), the Executive Director of the BPC, dated February 7, 1989, Feldstein requested that Ms. Lopez "re-review my case and allow the affirmative action officer to investigate without allowing irreparable harm [to] occur to me in the meanwhile." Jacoby Aff'd, Ex. 9 at 3. In this memorandum Feldstein again suggested that his termination was a retaliation by the facility for his complaints of mistreatment by co-workers: "Ms. Hardy's summation is the least honest portion of her letter. The reason she seeks my termination is to placate certain co-workers who hold discriminatory hostility towards me." Jacoby Aff'd, Ex. 9 at 2.

In a letter dated February 8, 1989, Horace A. Von Eeden ("Von Eeden"), Director of Personnel at the BPC, informed Feldstein that "after a review of your case, it has been decided to rescind the termination of your probationary services as a Secure Care Treatment Aide I[.]" Jacoby Aff'd, Ex. 10. However, the BPC also informed Feldstein that he would be required to "serve a second probationary period of twenty-six (26) weeks" and will be assigned to the day shift. Feldstein grievanced the switch to the day shift on or about February 9, 1989, and requested a "restoration to night shift assignment." Jacoby Aff'd, Ex. 11. Feldstein also protested his reassignment to Von Eeden on February 9, 1989, on the ground that his reassignment was procedurally defective, Jacoby Aff'd, Ex. 12, and to Lopez on the same day, Jacoby Aff'd, Ex. 13 ("Unless this facility withdraws its' [sic] intention to involuntarily switch my shift, I am forced to request a one-year leave of absence[.]"). Because Feldstein was unwilling to accept a second probationary term, Von Eeden informed Feldstein in a letter dated February 9, 1989, that BPC "must now process the probationary termination of your service[.]" Jacoby Aff'd, Ex. 14. In a letter dated February 11, 1989, Feldstein wrote to the New York State Department of Civil Service "appeal[ing]" the termination of his services and the extension of his probationary period. Jacoby Aff'd, Ex. 16. In a letter dated February 13, 1989, Von Eeden wrote to Feldstein to inform him that "there is no change in management's position [regarding termination]." Jacoby Aff'd, Ex. 17.

In a "Facility Exit Interview Questionnaire" dated February 16, 1989, Feldstein wrote that he was leaving the facility because he had been "terminated as a result of race and sex discrimination and for complaining about same." Jacoby Aff'd, Ex. 15. He also wrote that "[t]he work with the patients was rewarding but the experience of being victimized by racial and sexual discrimination was extremely unpleasant." On the same day he filed a grievance and requested "restoration to service with back pay" and "return to exact same assignment." Jacoby Aff'd, Ex. 18. The BPC refused to consider Feldstein's February 16, 1989 grievance in letters dated February 16, 1989, and February 21, 1989, because, it stated, "matters pertaining to

---

**2.** In this memorandum Feldstein also stated that "I don't know how far back to our country's sadder days of racism you can recall or have experienced, but few of today's racists go riding around in hoods or telling people they have to sit in the back of the bus."

probationary extensions and terminations are not reviewable [under the contract between the union and the State of New York]." Jacoby Aff'd, Exs. 19 and 20. Feldstein wrote to Von Eeden on February 17, 1989, "request[ing] that you reconsider your decision not to excuse my absences, and review the nature of my absences and their effect on my supervisor's ability to make a probationary assessment." Jacoby Aff'd, Ex. 21. Feldstein complained in this letter that, among other things, the facility's decision not to excuse his absences was arbitrary, capricious, and not executed in good faith.

## B. *State Administrative Proceedings*

On or about February 16, 1989, Feldstein filed a complaint with the New York State Division of Human Rights ("NYSDHR"). Jacoby Aff'd, Ex. 22. In this complaint Feldstein alleged that "I was denied equal terms, conditions, and privileges of employment in as much as the standards I had to adhere to were far higher than my Black co-workers, my evaluations were not given in a timely manner or in the correct sequence, my workload was greater, and I was denied the receipt of phone calls." In the complaint Feldstein also alleged that he was terminated after he protested the discriminatory treatment by his two co-workers. The record is silent as to the final determination by the NYSDHR regarding Feldstein's complaint.

## C. *State Court Proceedings*

On or about March 1, 1989, Feldstein commenced an Article 78 proceeding in New York Supreme Court, Bronx County, *Robert Feldstein v. Bronx Psychiatric Center, et al.,* Index No. 7622–1989, by serving an order to show cause and verified petition with annexed exhibits. Jacoby Aff'd, Ex. 23. The respondents were the BPC (a "facility of the New York State Office of Mental Health"), Richard Surles, Director of OMH, Lopez, and Von Eeden. In the ex parte order to show cause, respondents were ordered to show cause why a preliminary injunction should not issue enjoining respondents from replacing Feldstein and publishing any information regarding his work record. In Feldstein's Request for Judicial Intervention, also

dated March 1, 1989, Feldstein sought to "annul decision to extend probationary period of petitioner." Jacoby Aff'd, Ex. 25.

In his Verified Petition, Feldstein alleged, among other things, that respondents refused to address his grievance of February 16, 1989; that the extended probationary time was used to prepare retroactive evaluations; and that respondents frequently applied Rule 4.5(f) to excuse other probationers from serving an extended probationary period. Jacoby Aff'd, Ex. 23. The relief sought was an annulment of the determination made by the BPC; an order requiring the BPC to excuse Feldstein's scheduled absences; and an order restoring Feldstein to the position he would have been in had the BPC not made its determination. Jacoby Aff'd, Ex. 23, "Wherefore" clause.

On March 3, 1989, Feldstein was granted a temporary restraining order by Justice Hansel McGee restraining respondents from "fill[ing] or otherwise encumber[ing] employee number 16209" and from publishing any information regarding his work record. Jacoby Aff'd, Ex. 26. In his affidavit in support of the temporary restraining order, Feldstein alleged, among other things, that the extension of his probationary period was an abuse of discretion, Jacoby Aff'd, Ex. 27, ¶ 1; that there was "no performance-related justification for the termination," Jacoby Aff'd, Ex. 27, ¶ 2; and that "respondents and/or their employees are wilfully spreading false defamatory statements ... about me," Jacoby Aff'd, Ex. 27, ¶ 3.

On or about March 9, 1989, respondents made a motion pursuant to New York's Civil Practice Law and Rules Section 7804(f) vacating the temporary restraining order, denying the application for a preliminary injunction, and dismissing the petition "which seeks to annul the determination of respondents with respect to extending petitioner's period of probation[.]" Jacoby Aff'd, Ex. 29. In his affidavit in support of the motion, Von Eeden stated that, among other things, "[the] determination [to extend Feldstein's probationary period] was in conformity with the requirements of Rule 4.5(f) which mandates an extension of the probationary period which, in the discretion of the appointing

authority, is not counted as time served in the probationary [period]." Jacoby Aff'd, Ex. 30, ¶ 1. Von Eeden stated that, Feldstein's allegations notwithstanding, "[t]he use of Rule 4.5(f) for extending probations due to scheduled and unscheduled absences has been continuously and consistently applied to all employees." Jacoby Aff'd, Ex. 30, ¶ 3. He also stated that Feldstein could not suffer irreparable harm if the preliminary injunction was not issued because the BPC could rehire Feldstein should an administrative tribunal or court so order. Jacoby Aff'd, Ex. 30, ¶ 4(a). Von Eeden also denied that defendant was disseminating "malicious references concerning Mr. Feldstein to any prospective employer." Jacoby Aff'd, Ex. 30, ¶ 4(b). In an affidavit in support of the motion, the attorney for the BPC also alleged that "Mr. Feldstein's probationary period was properly extended in accordance with Rule 4.5(f)." Jacoby Aff'd, Ex. 31 at 4. Counsel also stated that "[w]ith respect to any allegations involving alleged discriminatory acts against Mr. Feldstein, it should be noted that these matters are irrelevant with respect to the issues being raised by the petitioner in this proceeding and, moreover, he has indicated in his supporting papers that he is still pursuing these matters in other forums by administrative procedures." Jacoby Aff'd, Ex. 31 at 4.

On or about March 13, 1989, Feldstein made a motion pursuant to New York's Civil Practice Law and Rules Section 3212, for "Summary Judgment ... on the basis that Respondents [sic] determination which Petitioner seeks annulled under CPLR Art. 78, is Arbitrary, Capricious, an abuse of Discretion, and and [sic] a non-feasance of the appointing officer's duty of office, as a matter of law." Jacoby Aff'd, Ex. 32.

On or about March 17, 1989, Feldstein served and filed an Amended Verified Petition in his Article 78 proceeding. In his Amended Verified Petition, Feldstein alleged, among other things, that (i) whereas co-workers were routinely allowed to receive personal calls, Feldstein's co-worker Ms. Jiggetts "routinely hung up the phone if the caller asked for [Feldstein]"; (ii) co-workers refused to assist Feldstein in performing his

duties; (iii) another co-worker was ordered by Ms. Jiggetts not to assist Feldstein; (iv) Feldstein complained to his team leader about the alleged mistreatment but "Ms. Hardy made no attempt to reduce Ms. Jiggetts [sic] hostility toward [Feldstein]"; and (v) "Ms. Hardy decided to end the hostility by Ms. Jiggetts toward [Feldstein] by requesting [his] termination." Feldstein also alleged that the extended probationary time was used to prepare retroactive and inaccurate evaluations so as to "better support [the] termination request." See Jacoby Aff'd, Ex. 33. The Amended Verified Petition recounts the termination of Feldstein's probationary period—he alleges that "[he] protested ... that he was terminated in order to accommodate Ms. Jiggetts' racial prejudice"—and his subsequent refusal to accept the facility's decision to rescind the termination if he would not accept a second probationary period and a new shift. In the Amended Verified Petition, Feldstein states that,

> On information and belief, I believe I was terminated for reasons unrelated to my work performance, including the fact that I objected to unequal treatment by racist co-workers.
>
> The termination was arbitrary, capricious, an abuse of discretion, and done in bad faith, and should be annulled.

Jacoby Aff'd, Ex. 33, ¶¶ 71–72. The relief sought was (i) an annulment of defendant's decision to terminate Feldstein; (ii) an order reinstating him with back pay; and (iii) an order annulling defendant's decision to excuse only ten days of his absences. Jacoby Aff'd, Ex. 33, "Wherefore" clause.

In his affirmation in response to Feldstein's Amended Verified Complaint, counsel for the BPC stated, among other things, that "[r]espondents deny any allegations or implications of racial prejudice in connection with Mr. Feldstein's employment or job termination. Moreover, Mr. Feldstein has submitted nothing whatsoever to support these allegations except his own unsupported self-serving statements." Jacoby Aff'd, Ex. 35 at 2. Counsel also argued that Feldstein had not exhausted his administrative remedies with the NYSDHR. Counsel described the "basic issues raised by this Article 78 Proceeding"

as follows: "[whether] the respondents acted properly when they extended Mr. Feldstein's period of probation under the discretion granted to them in Civil Service Regulation 4.5(f)." Jacoby Aff'd, Ex. 35 at 3. Counsel argued that because Feldstein was a probationary employee, Rule 4.5(f) gave respondents the right to terminate his employment without a hearing and without stating a reason therefor, so long as the discretion was exercised in good faith. Counsel argued that because Feldstein failed to raise any substantial issue of bad faith on the part of respondents, the Article 78 Proceeding should be dismissed. Jacoby Aff'd, Ex. 35 at 4.

In his response to this affidavit dated April 13, 1989, Feldstein stated, among other things, that "[t]he most relevant potential affiants are also hostile to my cause because they are the very persons who denied me equal conditions and terms of employment because of their own racial bigotry[.]" Jacoby Aff'd, Ex. 36, ¶ 3. He further asserted that the "missed phone calls and unfair assignments were the product of racial prejudice and the refusal of the team leader to remedy the problem." Jacoby Aff'd, Ex. 36, ¶ 4.

In a decision dated June 1, 1989, Justice Hansel McGee denied Feldstein's application for a preliminary injunction and his motion for summary judgment and granted BPC's cross-application to vacate the temporary restraining order and dismiss the Article 78 petition. Jacoby Aff'd, Ex. 37. Justice McGee noted that Feldstein was alleging that BPC's application of Rule 4.5(f) in his case was made in bad faith and arbitrarily and that the extension of his probationary period was made in order to give respondents time to prepare retroactive evaluations for periods prior to the end of the original probationary period. Jacoby Aff'd, Ex. 37 at 2. Justice McGee also noted that,

> [Feldstein] further asserts that he is a victim of racial bias. [Feldstein] states that he was the only white employee on his ward and was discriminated against by his fellow employees. He alleges that after bringing this issue to the attention of his supervisors, respondents' solution to ending the discriminatory actions was to terminate [Feldstein's] employment.
> Jacoby Aff'd, Ex. 37 at 2–3.

Justice McGee refused to enjoin the BPC from replacing Feldstein because, as defendant acknowledged, if Feldstein is successful with his suit, another "line item" will be provided in which he could be placed. Jacoby Aff'd, Ex. 37 at 3. Justice McGee granted respondents' cross-applications and denied Feldstein's motion for summary judgment because, in part, "[Rule 4.5(f) ] clearly states that any decision concerning the treatment of absences in extending a probation term is in the discretion of the appointing authority," Jacoby Aff'd, Ex. 37 at 4, and "[Feldstein] has not set forth any proof of his statements [that prejudice was involved in the decision to extend his probationary period or offer him a second probationary period in a new assignment]." Jacoby Aff'd, Ex. 37 at 5–6. The court wrote: "Exhibits submitted by petitioner himself alluded to instances from which respondents may have concluded that the termination of his services was warranted." Jacoby Aff'd, Ex. 37 at 6.

On or about June 21, 1989, Feldstein served and filed a notice of appeal to the First Department of the Appellate Division, appealing Justice McGee's decision dismissing his Article 78 Amended Verified Petition. Jacoby Aff'd, Ex. 38. Feldstein filed a pre-argument statement with the notice of motion in which he stated, among other things, that "[he] had set forth an uncontroverted primae [sic] facie case that respondents had acted arbitrarily, capriciously, and in an abuse of discretion," Jacoby Aff'd, Ex. 38, ¶ 8, and that "[t]he Court below erred in finding the evidence insufficient to find the same," Jacoby Aff'd, Ex. 37, ¶ 9. On or about June 29, 1989, Justice McGee signed an order to show cause directing respondents to appear on August 18, 1989, to demonstrate why an order should not be entered granting reargument. Jacoby Aff'd, Ex. 39. Feldstein was ordered to serve a copy of the order on respondents on or before July 17, 1989; the document indicates, however, that it was filed on December 8, 1989. The appeal to the First Department was never perfected and it appears that the appeal was

abandoned. Jacoby Aff'd, ¶ 36 ("On September 29, 1993, I was advised by the Appeals Clerk, Appellate Division, First Department, of New York Supreme Court, that the First Department has no record of Feldstein's having perfected his appeal.").

### D. Federal Administrative Proceedings

Feldstein filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), contemporaneously with the NYSDHR, on February 16, 1989. The EEOC issued Feldstein a Right to Sue Letter on or about June 11, 1991.

### E. Federal Court Proceedings

On or about September 4, 1991, Feldstein filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., alleging discrimination due to race, religion, and sex. Complaint, ¶ 5. In the complaint Feldstein alleged, among other things, that "[m]y co-workers, all of whom were of a different race than my own, denied me equal terms of employment"; and that he complained of the mistreatment to his Team Leader but that she took no action and instead "prepared retroactive and other false 'evaluations' ... with a request that I be terminated from my position." Complaint, ¶ 13. Plaintiff also alleged that "I was outraged that I was being asked to give up my tenure and shift based solely on racial and other discrimination." Complaint, ¶ 13.

A venue motion by defendant was denied on November 18, 1991. Defendant filed an answer dated November 26, 1991. On April 21, 1992, this court granted Feldstein's motion to amend the complaint and add a cause of action pursuant to 42 U.S.C. § 1983 which was never done. On or about May 24, 1993, appointed counsel for plaintiff filed an Amended Complaint. The factual allegations in the Amended Complaint include the following: (i) "Plaintiff was harassed by his co-workers, all of whom were either black or hispanic, because he is white"; (ii) "Plaintiff complained about his co-workers' discriminatory treatment to his supervisors, all of whom were black"; (iii) as a result of his opposition to the discriminatory treatment, a supervisor at the BPC "filled out false retroactive evaluations of Plaintiff's performance and recommended him for termination." Amended Complaint, ¶¶ 9–13. The Amended Complaint alleges four causes of action: discriminatory employment practices in violation of 42 U.S.C. § 2000e–5 and New York Executive Law § 296 (first cause of action); retaliatory discharge in violation of 42 U.S.C. § 2000e–3(a) and New York Executive Law § 296(7) (second cause of action); "loss of income and emotional pain and suffering" (third cause of action); and the common law tort of intentional infliction of emotional distress (fourth cause of action). Plaintiff also seeks actual and punitive damages, reinstatement, back pay, and demands a jury trial.

\*    \*    \*    \*    \*    \*

Defendant has moved to dismiss all state statutory causes of action pursuant to the Eleventh Amendment of the Constitution of the United States and Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); all state common law causes of action based on, among other things, the statute of limitations; and to strike plaintiff's jury demand and request for compensatory and punitive damages based on the fact that, in the Second Circuit, the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (the "Civil Rights Act of 1991"), is not applied retroactively for cases pending in the district court at the time of the enactment of the Act. Wisdom v. Intrepid Sea–Air Space Museum, 993 F.2d 5, 6–7 (2d Cir.1993). Plaintiff, in his opposition papers, does not contest any of these assertions and hence defendant's motion to dismiss the state causes of action and to strike his request for a jury trial and compensatory and punitive damages is granted.

Defendant, however, has also moved for summary judgment on the ground that plaintiff's Title VII action is barred by Justice McGee's decision in Feldstein's Article 78 proceeding. Plaintiff opposes this prong of defendant's motion.

### DISCUSSION

### I. Claim Preclusion

Defendant argues that Justice McGee's decision denying Feldstein's appli-

cation for a preliminary injunction and granting defendant's cross-application dismissing the Article 78 proceeding bars plaintiff's Title VII action in its entirety. In determining whether there is any preclusive effect to a prior state court judgment a federal court is required by 28 U.S.C. § 1738 to give that judgment the same effect that it would have had in the courts of the state under state law. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984) ("state-court judgment in this [Section 1983] litigation has the same claim preclusive effect in federal court that the judgment would have in the ... state courts."); *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). Section 1738 is fully applicable to Title VII actions. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (federal district court was required in Title VII action to give preclusive effect to state administrative agency's rejection of plaintiff's discrimination claim as meritless where the state court upheld that determination).

■ In *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159, 445 N.Y.S.2d 687, 688 (1981), the Court of Appeals enunciated the standard by which prior judgments in New York state will have a preclusive effect on subsequent actions:

> This State has adopted the transactional analysis approach in deciding res judicata [or claim preclusion] issues.... Under this address [sic], once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, *even if based upon different theories or if seeking a different remedy.*

(emphasis added) (citation omitted). *See also Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986) ("New York courts have adopted the 'transactional approach' to res judicata, holding that if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief."). Under the transactional analysis a claim or

cause of action is viewed as coterminous with the transaction regardless of the number of substantive theories or different forms of relief available to the plaintiff. *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 429 N.E.2d 746, 749, 445 N.Y.S.2d 68, 71 (1981). "A claim arises from the same transaction and is barred 'where the same foundation facts serve as a predicate for each proceeding.'" *Antonsen v. Ward*, No. 87 Civ. 7314, 1991 WL 12141 at *3 (S.D.N.Y.1991) (citing *Reilly v. Reid*, 45 N.Y.2d 24, 30, 379 N.E.2d 172, 176, 407 N.Y.S.2d 645, 649 (1978)), *aff'd*, 943 F.2d 198 (2d Cir.1991). "This bar against later claims based upon the same cause of action is, however, subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award a full measure of relief sought in the later litigation." *Davidson*, 792 F.2d at 278.

### A. The Transactional Analysis

■ Based on the recitation of facts outlined above, there can be little doubt but that Feldstein's Article 78 proceeding and his Title VII action arose out of the same "factual grouping." Both of these actions stem from Feldstein's employment at the BPC and its determination to terminate his employment after he decided not to accept its offer of a second probationary period and a new shift.

In Feldstein's Verified Amended Petition he alleges, for example, mistreatment by his co-workers and a retaliatory motive on the part of his employer vis-a-vis its decision to terminate him following his refusal to accept a second probationary period and a new shift. Jacoby Aff'd, Ex. 33, ¶ 51 ("Petitioner protested at this meeting that he was terminated in order to accommodate Ms. Jiggetts' racial prejudice."); ¶ 43 ("Ms. Hardy decided to end the hostility by Ms. Jiggetts toward Petitioner by requesting Petitioner's termination."); ¶ 71 ("I believe I was terminated for reasons unrelated to my work performance, including the fact that I objected to unequal treatment by racist co-workers."). The Amended Complaint also states as follows:

> [Feldstein] alleges he was harassed by co-workers while he was employed at defen-

dant [BPC] on the basis of his race, and that when he complained of the discriminatory treatment, his supervisors at the [BPC] failed to take corrective measures and retaliated against him by filling out retroactive negative evaluations and discharging him from his employment. Amended Complaint, ¶ 1.

Plaintiff argues, however, that the issues litigated in the Article 78 proceeding did not arise out of the same factual grouping as the issues in plaintiff's Title VII action because "[t]he primary Article 78 proceeding determination was that the BPC was not arbitrary and capricious in refusing to waive an extension of Mr. Feldstein's probationary term." Pl.'s Mem. at 6. Plaintiff argues, in essence, that the two actions do not arise from the same "foundation facts" because Justice McGee was faced with a set of issues allegedly far removed from this Title VII action for harassment and retaliatory discharge; *i.e.*, whereas the Title VII complaint seeks relief based on, among other things, race-based harassment at the work place, Feldstein's Article 78 proceeding sought a determination that the BPC's employment determinations were arbitrary and capricious.

█ Plaintiff's arguments, however, are unavailing. The transactional analysis rests on an analysis of the *facts* underlying the two claims and not on the different theories upon which plaintiff or petitioner seeks redress. The question is not what legal conclusion the first tribunal was asked to determine but whether the issue before the first tribunal arose from the same factual setting as that which is before the second tribunal. For example, in *Natta v. Columbia University College of Physicians and Surgeons*, No. 91 Civ. 7437, 1992 WL 80760 (S.D.N.Y. Apr. 3, 1992), plaintiff brought an action in New York State Supreme Court claiming that the university's failure to recognize his de facto tenure violated the university's statutes and his employment contract. After a full trial the state court dismissed the action, the Appellate Division affirmed, and the Court of Appeals denied leave to appeal. Plaintiff thereafter brought a Title VII action in federal court alleging that he was the victim of race discrimination. Because both actions arose from the university's decision not to recognize his alleged de facto tenure, the District Court held that "[t]here is a clear transactional identity between the facts underlying [the state court action] and this case." *Id.* at *3. The same is true in this action: As in this Title VII action, Feldstein's Article 78 proceeding stemmed from the alleged improper actions of the BPC during the last months of his employment with the facility.

### B. *Capability of Awarding Relief Sought*

Plaintiff argues, however, that "[e]ven if all of the issues in [plaintiff's Title VII action] were litigated [in the Article 78 proceeding], Res Judicata would not preclude any of them from further litigation in this Court since the Article 78 court did not have the authority to award the full measure of relief sought in this action." Pl.'s Mem. at 5.

If plaintiff were prosecuting a federal civil rights action pursuant to 42 U.S.C. § 1983 he would be correct and the Article 78 proceeding would not preclude the continuation of the federal action. "The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit such as this one." *Davis v. Halpern*, 813 F.2d 37, 38 (2d Cir.1987) (Sections 1983 and 1985 and Title VI action not barred by prior adverse determination in Article 78 proceeding). *See also Giano v. Flood*, 803 F.2d 769 (2d Cir.1986) (Section 1983 action not barred by prior adverse determination in Article 78 proceeding); *Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21 (2d Cir.1986) (same); *Davidson*, 792 F.2d at 277–82 (same). In the recent Second Circuit case of *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir.1994), the court used the same analysis to conclude that an adverse decision in a state habeas corpus proceeding does not bar the plaintiff's subsequent Section 1983 action. "Because it is clear that a petitioner in a New York State habeas proceeding is not entitled to damages, this case is controlled by the analysis in *Davidson*, which involved the preclusive effect under New York law of a prior Article 78 proceeding for a subsequent § 1983 claim."

However, unlike a Section 1983 action, which allows for compensatory and punitive damages, the damages available in plaintiff's Title VII action would have also been available in the Article 78 proceeding had Justice McGee determined that Feldstein's termination was arbitrary and capricious. Section 7806 of New York's Civil Practice Law and Rules provides in relevant part that "[a]ny restitution or damages granted to the petitioner [in the Article 78 proceeding] must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." The Court of Appeals has stated that "[w]hether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim, is dependent upon the facts and issues presented in a particular case." *Gross v. Perales*, 72 N.Y.2d 231, 236, 527 N.E.2d 1205, 1207, 532 N.Y.S.2d 68, 70–71 (1988) (where city seeks a determination that the state's decision to withhold 20 million dollars in reimbursements as an administrative remedy was arbitrary and capricious, the monetary relief sought (the 20 million dollars) was incidental to the legal core of city's claim). Regarding the second requirement, the Court of Appeals held that even though the state may only be sued for money damages in the Court of Claims, incidental damages are recoverable in an Article 78 proceeding commenced in Supreme Court: "There is absolutely no indication that the Legislature [in adding this language to Section 7806] intended to otherwise limit the power of the Supreme Court to award incidental monetary damages in an article 78 proceeding." *Id.* at 237, 531 N.E.2d at 1208–09, 532 N.Y.S.2d at 72.

In this case, the primary relief sought by Feldstein in his Article 78 proceeding was reinstatement based on a determination that the BPC's actions were arbitrary and capricious. In his first Verified Petition Feldstein sought an annulment of the determination made by the BPC; an order requiring the BPC to excuse his scheduled absences; and an order restoring Feldstein to the position he would have been in had the BPC not made its determinations. Jacoby Aff'd, Ex. 23, "Wherefore" clause. In his Amended Verified Petition, he sought an annulment of defendant's decision to terminate him; an order reinstating him with back pay; and an order annulling defendant's decision to excuse only ten days of his absences. Jacoby Aff'd, Ex. 33, "Wherefore" clause. Relief incidental to Feldstein's reinstatement would have been the back pay he requested. The Court of Appeals has held that incidental damages includes back pay in an Article 78 proceeding seeking reinstatement. *Pauk v. Board of Trustees of the City Univ. of N.Y.*, 68 N.Y.2d 702, 704–05, 497 N.E.2d 675, 675, 506 N.Y.S.2d 308, 308 (1986):

> [H]ad [plaintiff] prevailed on appeal in the prior article 78 proceeding, plaintiff could have been awarded the loss of salary he is currently seeking, calculated from the date he was no longer employed at Queens College to the date of reinstatement. *Under CPLR 7806, the lost salary would have been "incidental to the primary relief sought by petitioner"*, i.e., rescission of the letter terminating his employment and an order declaring him to be a tenured member of the Queens College faculty.

(emphasis added).

Similarly, in a Title VII action, the relief generally available is also reinstatement and back pay. The statute specifically states that,

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e–5(g)(1). Prior to the passage of the Civil Rights Act of 1991 (which plaintiff concedes is not applied retroactively in this circuit), compensatory and punitive damages were not available in Title VII actions in the Second Circuit. *Carrero v. New*

*York City Housing Auth.,* 890 F.2d 569, 581 (2d Cir.1989) ("Having found liability against the Authority only under Title VII and none under § 1983, no award for pain and suffering may be recovered from the Authority. *This follows because neither compensatory nor punitive damages are recoverable under Title VII.*") (emphasis added). Therefore, the relief available under Title VII for Feldstein's race discrimination claim is the same relief that could have been awarded in the Article 78 proceeding had he been successful in establishing that the BPC's actions were arbitrary and capricious due to, among other things, the racial prejudice practiced by his co-workers and the BPC's allegedly retaliatory termination.

In this case, plaintiff brought an Article 78 proceeding challenging the actions of his employer and specifically alleging that its decisions were arbitrary and capricious because, among other things, he was the victim of discrimination at the workplace. The Article 78 court acknowledged the allegations upon which Feldstein based his assertion that the actions of the BPC were arbitrary and capricious:

> [Feldstein] further asserts that he is a victim of racial bias. [Feldstein] states that he was the only white employee on his ward and was discriminated against by his fellow employees. He alleges that after bringing this issue to the attention of his supervisors, respondents' solution to ending the discriminatory actions was to terminate [Feldstein's] employment. Respondents deny that racial prejudice was involved with his termination.

Jacoby Aff'd, Ex. 37 at 2–3.

The court also specifically held, however, that the BPC's actions were not arbitrary and capricious, thus finding that Feldstein was *not* the victim of employment discrimination:

> Respondents' actions in first extending petitioner's probationary period and then offering him a second probationary period

in a new assignment were in the respondents' discretion, *assuming no prohibited prejudice was involved.*

> This court does not condone prejudice of any kind. *Petitioner herein, however, has not set forth any proof of his statements.* Exhibits submitted by petitioner himself alluded to instances from which respondents may have concluded that the termination of his services was warranted.

Jacoby Aff'd, Ex. 37 at 5–6 (emphasis added). The appeal of this determination was never perfected by Feldstein. Because the Article 78 court could have awarded Feldstein the very relief he seeks in this Title VII case had the court found that Feldstein was arbitrarily and capriciously terminated due to impermissible discrimination, the Article 78 proceeding is a preclusive bar to this Title VII action which stems from the same factual grouping.

In *McQuire v. City of New York,* No. 84 Civ. 3789, 1985 WL 3038 (S.D.N.Y. Oct. 7, 1985), the court held that an Article 78 proceeding in which it was determined that plaintiff's termination was not an abuse of the employer's discretion would *not* bar a subsequent Title VII action. The court reasoned that the plaintiff could not have raised either a Title VII retaliatory discharge claim nor a claim under New York's employment discrimination laws, N.Y.Exec.Law § 296(1)(a), because (i) the plaintiff had not yet received a right-to-sue letter from the EEOC; and (ii) having commenced an action with the state administrative agency he was precluded from commencing a court action based on an incident that had formed the basis of that earlier complaint to the agency. This is also the case in this action: Feldstein filed complaints with both the EEOC and the NYSDHR prior to commencing his Article 78 proceeding. However, Feldstein did in fact allege racial discrimination and that issue was necessarily decided by the Article 78 court when it determined that the BPC's actions were lawful. Such does not appear to be the case in *McQuire.*[3] Furthermore, the court in *Burgos v. Hopkins,* 14 F.3d 787 (2d

---

3. The court recounted that the Article 78 court dismissed the plaintiff's petition finding that the hearing officer had not abused his discretion, that the plaintiff had not been denied due process of law, and that the punishment for the plaintiff's infractions (submitting false expense accounts) warranted dismissal. *Id.,* 1985 WL 3038 at *1. The Article 78 court's determination was upheld on appeal.

Cir.1994), emphasized that the exception to the application of claim preclusion applies when the first tribunal is barred from awarding the relief sought and not when the first tribunal was barred from entertaining a certain theory of relief. "Thus, where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers ... a subsequent action for damages will not normally be barred by res judicata...." *Id.*, 1985 WL 3038 at *4.

In sum, plaintiff's argument against the application of claim preclusion in this action—"The Article 78 court could not have provided Mr. Feldstein with the same relief sought in this litigation." (Pl.'s Mem. at 8)—is simply not applicable to a pre-Civil Rights Act of 1991 Title VII action. Summary judgment dismissing plaintiff's Title VII action is therefore appropriate.

## II. *Issue Preclusion*

▋ However, even if claim preclusion would not bar this Title VII action, the related doctrine of issue preclusion, or collateral estoppel, would also dictate that plaintiff's retaliatory discharge claim be dismissed. Under New York law, issue preclusion is applicable if,

> (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom issue preclusion is sought had a full and fair opportunity to contest the decision involved as dispositive in the later controversy; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

*Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987). As should be clear from the recitation of facts presented above, all of these criteria have been met in this case: (1) the Article 78 court made a final determination on the merits of Feldstein's claim that the BPC's actions were unlawful because of the alleged racial animus in the workplace which led to complaints and the alleged retaliatory discharge; (2) Feldstein had a full and fair opportunity to litigate the issue of why his termination was improper; and (3) the issue in the Article 78 action—the legality of petitioner's ter-

mination—is the same issue involved in this Title VII action.

In this regard, *Rameau v. New York State Dept. of Health*, 741 F.Supp. 68 (S.D.N.Y. 1990), is instructive. In *Rameau*, the plaintiff, who was also a probationary state employee, also challenged his termination in an Article 78 proceeding and sought reinstatement with back pay. "The petition contained claims that his termination was unlawful under the New York State Civil Service Law, was arbitrary, capricious and unlawful because it was made in bad faith, was motivated by racial and ethnic bias, and was in retaliation for his filing of the [NYSDHR] complaint." *Id.* at 70 (internal citations omitted). As in this case, the Article 78 court dismissed the petition finding that the record did not reflect any bad faith. Rather, "the '[a]lleged instances of discrimination and harassment [were] refuted by the persons against whom the allegations are made and have no evidentiary support[.]' " *Id.* As in Feldstein's case, this determination was not appealed.

In holding that plaintiff's Sections 1983, 1981 and Title VII claim of retaliatory discharge was barred because of the doctrine of issue preclusion, the court in *Rameau* wrote,

> In the Article 78 proceeding, the plaintiff claimed that his dismissal was arbitrary, capricious, unlawful and made in bad faith *because* it was based on racial and ethnic discrimination. Had the state court found that the allegations of discrimination were supported by the facts it could not have found that plaintiff was properly discharged. Therefore, the finding that plaintiff's dismissal was not based on race or ethnicity was essential to the state court's holding and that claim therefore cannot be relitigated here.

*Id.* at 71 (emphasis in original). "Accordingly, all claims in the Federal Complaint founded upon allegations that plaintiff's termination was racially motivated are precluded by the state court judgment, *i.e.*, plaintiff's request for reinstatement with back pay and declaratory relief and damages to the extent

that they arise from plaintiff's termination." *Id.* at 71–72.[4]

Plaintiff argues, however, that there is no identity of issues between the Article 78 proceeding and this Title VII action because "Mr. Feldstein raised, in the Article 78 proceeding, the issue of BPC's wrongful refusal to waive the extension of his probation and, *arguably,* defendant's retaliatory termination of Mr. Feldstein." Pl.'s Mem. at 9–10 (emphasis added). The problem with plaintiff's position, of course, is that there was nothing "arguable" about the fact that Feldstein petitioned the supreme court to annul his termination by the BPC based on the retaliatory actions of its senior employees. Plaintiff argues that Justice McGee did not decide the issue of plaintiff's wrongful termination "but rather held that Mr. Feldstein had not proven his allegations." Pl.'s Mem. at 10. The distinction is illusory: By failing to prove, as did the plaintiff in *Rameau,* that improper racial animus played a role in the employer's decision to terminate, the issue was, in fact, decided and hence Feldstein is barred from relitigating that issue in federal court.

■ Finally, plaintiff argues that even if the issues were identical, Feldstein did not have a full and fair opportunity to litigate them because of the special nature of the Article 78 forum. Pl.'s Mem. at 11 (noting, for example, that in Article 78 proceedings petitioner must obtain leave of court in order to utilize disclosure devices). In this regard plaintiff relies on the language in *Davidson* which noted that Article 78 is a "special proceeding" designed to accord summary relief and a "speedy correction of improper action by a 'body or officer.'". *Davidson,* 792 F.2d 275, 280 (2d Cir.1986). However, as the court in *Rameau* noted, "a full and fair litigation opportunity is provided if the procedures in the initial forum meet the minimum de-

mands of procedural due process." *Rameau,* 741 F.Supp. at 71 n. 3 (citing *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 483–84, 102 S.Ct. 1883, 1898–99, 72 L.Ed.2d 262 (1982)). As in *Rameau,* Feldstein submitted exhibits attached to his Amended Verified Petition and could have petitioned the state court for discovery or a trial pursuant to Sections 408 and 410, respectively, of New York's Civil Practice Law and Rules. "It cannot be said that these procedures do not provide plaintiff with due process." *Rameau,* 741 F.Supp. at 71 n. 3. Feldstein cannot rely on his failure to invoke available procedures as a basis to attack the Article 78 proceeding nor does his failure to appeal limit the preclusive effects of the first tribunal's determination. *Id.* Moreover, it is instructive that in *Burgos v. Hopkins,* 14 F.3d 787 (2d Cir.1994), the Second Circuit, noting the special and summary nature of a habeas proceeding, remanded the case for a determination by the district court as to whether the issues decided in plaintiff's state action were precluded from being relitigated pursuant to the doctrine of collateral estoppel. In so doing, the court noted the requirement of a full and fair opportunity to litigate but only cautioned the district court that "[o]n remand, the district court must determine whether all of [plaintiff's] issues in the instant suit were brought in the habeas petition, or whether other differences in the nature of the suit mandate that he be given a chance to prove his case." *Id.* at 793. Although the issue was not before the court, the combination of its acknowledgment that habeas actions are akin to Article 78 proceedings in their summary nature, and its silence on that issue when discussing the elements of issue preclusion, is worthy of note.

In sum, the holding and rationale of *Rameau* apply with equal force to Feldstein's

4. The court in *Rameau* held, however, that plaintiff's claim for damages from harassment was *not* precluded by the Article 78 proceeding because "[t]hat issue was never presented to the state court, which, in any event, only had jurisdiction to consider whether plaintiff's discharge violated state law." *Id.* at 72 (internal citation omitted). Because a finding of no harassment was not essential to the claim that the employer's termination was arbitrary and capricious, the federal harassment claim survived. In this case, howev-

er, because claim preclusion bars the entire Title VII action, Feldstein's harassment claim must be dismissed. The court in *Rameau* did not apply claim preclusion to the federal civil rights action because the plaintiff's claim was also founded upon Sections 1981 and 1983 and the Fifth and Fourteenth Amendments of the United States Constitution. The Article 78 court could not have awarded full damages for those causes of action.

**1102**

federal action and therefore even if claim preclusion were not applicable in this case, issue preclusion would bar the federal retaliatory discharge claim.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.