■ BRENDA SANTIAGO, on Behalf of Her Son, ERIC GARCIA, et al., Respondents, and DAVID NIEVES, on Behalf of His Son, JORDAN NIEVES, et al., Intervenors-Respondents, v NEW YORK CITY BOARD OF HEALTH et al., Appellants. [779 NYS2d 474]—

Order, Supreme Court, New York County (Louis B. York, J.), entered July 21, 2003, denying defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint. Appeal from order, same court and Justice, entered September 22, 2002, unanimously dismissed, without costs or disbursements, as superseded by the appeal from the July 21, 2003 order.

In a prior action, *Auclair v New York City School Constr. Auth.* (Sup Ct, NY County, Index No. 117617/97), instituted on or about May 12, 1998, after she had first sought permission to intervene in this lawsuit on behalf of her daughter Kyla, Gayle Raskin was one of the numerous parents seeking damages for personal injuries sustained by their children against the New York City School Construction Authority (SCA), the New York City Board of Education (BOE) and the City of New York, as well as two private construction companies, arising out of the alleged release of lead dust during construction work at P.S. 61. The mother, Gayle, claimed that in dropping off and picking up her children she was also exposed to the same lead contaminants as her children. On December 29, 1999, Supreme Court granted the defendants' motion for summary judgment dismissing the complaint, holding that there was no evidence "that any of the children or their parents have blood levels of 10ug/dl [10 micrograms of lead per deciliter of whole blood] or greater," an elevated blood level as defined by state and city law (*see* Public Health Law § 1370 [6]; New York City Health Code [24 RCNY] § 11.03). The court noted that some of the children, including Raskin's, had not even been tested for lead and that no negative impact on their growth or behavior, problems usually associated with lead poisoning, had been demonstrated. Included in the court's disposition was the dismissal of the plaintiffs' claims, both their own and those made on behalf of their children, for emotional distress. The order of dismissal was never appealed.

In the instant action, in which plaintiff-intervenor Gayle Raskin is suing on behalf of her daughter Kyla, plaintiffs do not seek monetary damages.* Instead, they seek a declaration, inter alia, that the defendants have "failed and refused to implement policies to inspect and eliminate violations of state and city health and education laws applicable to lead paint in all facilities where children under seven years old receive" care and education. Plaintiffs also seek injunctive relief enjoining defendants from failing to enforce laws designed to ensure that plaintiffs and all children under the age of seven receive care and education in safe and habitable conditions free from lead and to implement procedures to correct any violations. In their amended answer to the amended second intervening class action complaint, defendants asserted the affirmative defense of res judicata and collateral estoppel on the basis of the dismissal of the *Auclair* complaint and, on the basis of that defense, moved in December 2001 for summary judgment dismissing the

---

* By order entered August 16, 2001, the action was dismissed as to all plaintiffs other than the Raskins on the ground that they lacked standing.

amended complaint as to the Raskins. Defendants argued that the claims here and the claims asserted in *Auclair* were based on the same transaction, that is, the work performed on the exterior masonry at P.S. 61. In opposition, plaintiff Raskin argued that defendants' "waiver by acquiescence" exempted her from res judicata since defendants did not raise the issue at the "earliest opportunity" on May 12, 1998, when the *Auclair* complaint was filed. After an interim order, also on appeal, allowing each party to submit a brief on the issue of collateral estoppel only, Supreme Court denied the motion, explaining, "The injury to plaintiffs and to the class is prospective, based on the threat of imminent harm; and it does not require a finding that the children currently have elevated blood lead levels." We reverse.

Supreme Court erred in holding that plaintiff Raskin's claims were not barred by res judicata or collateral estoppel. In both the instant action and prior *Auclair* action in which Raskin was also a plaintiff, dismissed because none of the plaintiffs could demonstrate an injury, the same improper masonry work at P.S. 61 is alleged as the cause of the release of lead dust. Since res judicata bars subsequent claims based on the same transaction, Raskin is precluded from bringing this action. In determining the applicability of res judicata, the Court of Appeals has adopted a transactional approach (*Reilly v Reid*, 45 NY2d 24, 29 [1978]). "The transaction is the basis of the litigative unit or entity which may not be split" (Restatement [Second] of Judgments § 24, Comment *a* [1982]; *Smith v Russell Sage Coll.*, 54 NY2d 185, 192 [1981]). Thus, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]; *see also* Restatement [Second] of Judgments § 24 [1982]). It does not matter that the claim for declaratory and injunctive relief was not litigated in the first action. What matters is that the latter claims could have been asserted in the first action and Raskin had a full and fair opportunity to litigate those claims in that action.

As for plaintiff's argument of waiver of the res judicata defense, Raskin was not even a plaintiff in this action at the time defendants were served in the *Auclair* action. Furthermore, when an earlier withdrawn intervention motion in this action was revived in July 2000, the parties stipulated that if intervention were granted, defendants would move to dismiss the complaint and that "[n]othing herein, including but not limited to the fact that defendants consented to the intervention . . .

shall be used by the [intervening plaintiffs] in opposition to defendants' motion to dismiss the . . . [c]omplaint." Thus, as the stipulation clearly shows, defendants did not waive the res judicata defense now being asserted. Nor did Raskin maintain parallel lawsuits stemming from the same transaction. The revival of the intervention motion in July 2000 occurred seven months after the *Auclair* complaint was dismissed. Concur— Mazzarelli, J.P., Saxe, Sullivan, Marlow and Gonzalez, JJ.